Folger, J.
The appellants have madé elaborate points, that certain of the findings of fact are without evidence to support them, and that thus there was error of law.
The testimony has been examined with care and patience. I am convinced that there is testimony, which relied upon in preference to that which is in conflict with it, sustains the findings in question; or that the evidence adduced would not necessarily have sustained a contrary finding.
*251 It appears from the instrument executed to Jacob Carpenter by Harris Wilson, that the latter did not take an absolute interest in the houses and lots conveyed to him by the former. Hence he did not take an absolute interest, (if he took any), in the claim against Stilwell for the rents of those houses and lots. He held both in the nature of mortgages.
It appears from the answer of Gilbert to the complaint of Schultz, put in evidence by the plaintiff, that the indebtedness to Wilson, for which the latter held the conveyance of the honse and lots and the claim, was paid before the assignment of the claim to Gilbert. Thus the lien of Wilson upon the houses and lots, and upon the claim, was discharged, and Carpenter was again the owner thereof, discharged from that incumbrance. Wilson did assign the claim to Gilbert, but it was at the request of Carpenter, and it was the same as if Carpenter had himself assigned it to Gilbert, after a re-assignment by Wilson to Carpenter.
This assignment to Gilbert was not an absolute one. It was to secure an indebtedness to Gilbert, upon the payment of which at any time Carpenter was entitled to a re-assignment to him of the claim, or rather, by a payment of it, the lien upon it was discharged, and Carpenter, the owner of it, would own it without incumbrance again. The note of Gilbert to George Carpenter was not materially different in legal effect from the instrument from Wilson to Carpenter, and the whole transaction between Gilbert and the Carpenters, did not divest Jacob Carpenter of a right and interest in the claim as owner, subject to their respective liens.
The answer of Gilbert to the complaint of Schultz, shows that on October 12, 1858, Jacob Carpenter was the owner in equity of the note from Gilbert to George Carpenter, and that it was then paid to Jacob Carpenter, and satisfied by Gilbert. The oral testimony of Gilbert shows that this payment and satisfaction was *252 upon a settlement of indebtedness of Carpenter to Mm, and was done by an assignment by Gilbert to Curtis, at the request of Carpenter, of the judgment against Stilwell, which Gilbert had recovered upon the claim. Gilbert was then paid his indebtedness. There is no showing of any subsequent claim by George Carpenter, and the special term might well infer that his demand, if any, was satisfied then, or before then.
Jacob Carpenter did thus become again the real owner of the claim, now merged in the judgment, without incumbrance upon it. Curtis held the legal title, but held it for Carpenter. It is not necessary at present to trace the subsequent, various dealings of Carpenter with the judgment, for it was before the last named date, that the transaction took place between him and Stilwell, by which, it is claimed, the judgment was paid, satisfied and released.
Here the appellants cite Eaton v. Alger (47 N. Y. 345). That case lays down no rule at variance with the view here taken. It was there ruled at circuit and held on review, that the actual holder of a .negotiable promissory note (S. C., 2 Abb. Ct. App. Dec. 5), was primafacie the owner of it; and that a receipt from him to the person named in the note as payee, in which he agreed to account for the note to that payee, did not prevent him from maintaining an action on it in his own name. The claim assigned in the action before us was not negotiable, and there could not pass by delivery only, as in Eaton v. Alger (supra), the entire title to it; so that the effect of the transaction upon the ownership of the claim here, is to be arrived at from all the facts of which that transaction is made up. There was in the case cited, no right left in the payee of the note to make payment of any sum to Eaton, and demand and have a re-assignment of the note. He could only enforce his contract as expressed in the receipt. Here Gilbert had the right to have a *253 return to him of his note to George Carpenter, in case he could not collect the claim. This involved the counter right in Carpenter, to surrender the note, and pay the indebtedness to Gilbert, and have a re-assignment of the claim. The case cited, decided only that the plaintiff had sufficient title to maintain the action under the provisions of the code of procedure, sec. 111. The opinion declares that it is a close case, —not free from doubt,—on the border line. Gilbert may have had such an interest in the claim as to entitle him to sue upon it; but Carpenter was an owner of it, subject to the payment of his indebtedness.
There is the positive testimony of one witness, that Carpenter executed a general release to Stilwell of all claims legal and equitable. Another witness testified to an alleged copy óf such a release contained in a draft of a complaint. Carpenter does not positively deny the execution of such a paper ; he denies recollection of it. This made a conflict of testimony, and put upon the trial court the duty, as it had the power, of saying which prevailed, and it found that such a release was executed.
The appellants here insist, that inasmuch as the verified answer denies the allegation of a release, contained in the complaint, that the fact of a release is not established, unless shown by two witnesses or by documentary evidence, ór by facts and circumstances ■mahing the proof equivalent to that from two witnesses. Such was the former rule in equity in this State, —when the bill could be so framed as to waive an answer on oath, or to compel an answer on oath, which would be evidence in the case. The answer in the latter case was testimony, and could be put in evidence, as well by the defendant in his behalf, as by the complainant against him. But since the code of procedure, the pleadings have not that attribute. They serve a different purpose. They are simply pleadings, the *254 machinery for reaching the issues to be tried. What is alleged in the complaint and hot denied in the answer, becomes' a fact in the case. What is denied, though the denial be verified, is not testimony for the defendant, does not weigh in his behalf as one witness, and so does not need to be overcome by the preponderance of one witness against it. The parties, now having the right to offer themselves as witnesses, occupy the position of other witnesses, and where the testimony of either conflicts with that of .another witness, though there be no other testimony upon the point in dispute, the preponderance is to be determined by the tribunal. .
There was testimony of the assignment by Stilwell, in blank, as to the name of the assignee, of certain judgments against Carpenter; that this assignment was the consideration for the release ; and was to pay and did pay the gross amount of the rents collected by Stilwell, from all the property. This testimony was credited by the special term. The Gilbert judgment was for a part of those rents. It was owned by Carpenter. It fell within the terms of the release executed by him, and within the language of the testimony; according to that testimony, it was paid by the assignment of the judgment, and was in fact discharged. That Gilbert .still held the judgment when the release was given, does not alter the final effect of the payment to Carpenter, and of his release to Stilwell. They did at once, on being made, affect and extinguish all of his interest and ownership therein. He might not thereby, let it be conceded for the moment, discharge Gilbert’s or other persons’ claim secured by it; but as soon as that claim was paid the whole ownership was gone, by force of the release, though payment of the claim was not until after the release.
Whether or not the Gilbert judgment entered specifically into the contemplation of the parties to the *255 release it is of no use to inquire. There was no such issue raised by the answer, nor was such issue made and tried before the special term. Nor is there a finding thereto, upon which this court can act, to reverse. If Carpenter had a legal or equitable title to that judgment at the time of executing the release of all claims legal or equitable against Stilwell, that judgment was affected by that release and Stilwell was relieved from it, for it was broad in its terms and covered the judgment. Nor does it cease to have that operation until it is reformed in its terms, and the effect of it thus limited. Moreover, it appears in testimony, that Carpenter had brought suit for the very rents, to collect which the Gilbert action was brought.
The result might have been different at special term had the defendant put in evidence there certain records, copies of which are produced for the first time in this court. Records are sometimes produced on argument at bar, and are received to cure an omission through inadvertence of proof at the trial. It is believed that this is permitted only to uphold a judgment. An appellate court reverses a judgment only for errors committed below. No error is committed in finding a fact upon testimony given to the court b.elow, though there is a record, not produced on trial, which if read there would have shown that testimony false or mistaken. To hold otherwise would be to find an error ex post facto.
Thus far, we have found Carpenter with an interest in this claim, or the judgment in which it was merged. In 1862, it appears to have been assigned by Curtis, the assignee of Gilbert, to Markham. There is no finding that this was not an absolute assignment, passing all the title possible, and there is evidence which would be opposed to such a finding. On December 8, 1864, it was assigned absolutely by Markham to Jacob Carpenter, and he became the entire owner of it. In the- *256 meantime, proceedings had been pending in the surrogate’s court for an accounting by the plaintiff in this action. These proceedings did not end by a surrogate’s decree, until the year 1866. On December 30, 1864, at a hearing before the surrogate, the counsel for the plaintiff in this action, offered as a set-off to the Gilbert judgment, several judgments against Carpenter. It was objected by counsel opposed, that the Gilbert judgment, “never belonged to Carpenter, and belongs to Markham,” and that the surrogate could not pass upon the question of equitable interest therein, but must be governed by the legal title. This question was not decided by the surrogate, until January 13, 1865. I think that from this testimony and other in the case, the special term might infer that the counsel who raised the objection were really acting for Jacob Carpenter, and that the fact of an assignment of the judgment from Markham to Carpenter was concealed from the surrogate by the latter, in the sense that it was not disclosed.
It is apparent that if by the general release, and the settlement between Gilbert and Carpenter in 1858, the judment against Stilwell was extinguished, that there was no power in the sheriff to sell land upon it thereafter. The sale made in 1863, was therefore of no avail. Curtis took no real right by the certificate of sale, nor did Markham his assignee, nor did Davis the assignee of Markham, unless Davis could show that he was a bona jlde purchaser for value paid, and could establish an estoppel against the plaintiff. The onus was then upon Davis to show that he was such purchaser. He testified on direct examination, that he bought the certificate and paid the money, with no knowledge of any kind, of any of the facts alleged in the complaint, except of the sheriff’s sale; that he bought at the suggestion of Carpenter on the advice of one Butts, his friend; and his testimony has corrobo *257 ration from that of Carpenter. But the cross-examination of Davis, showed a state of things which would enable a jury or judge, to call his statements on exam- . ination-in-chief improbable.
A witness, though uncontradicted and unimpeached by impeaching testimony, may be disbelieved. Not arbitrarily, in the absence of contradiction, or impeachment, or intrinsic improbability in his statements taken as a whole (Newton v. Pope, 1 Cow. 109). The case cited grants that it is difficult to establish a rule which shall limit the discretion of a court or jury, in the degree of credit to be given to the testimony of different witnesses. But though a witness of fair fame, uncontradicted by any other testimony, or any circumstances in which he may stand, may not be disbelieved, yet there may be that in his own testimony to prevent confidence in it (Harding v. Brooks, 5 Pick. 245). We are not to say, that we would not have believed Davis or Carpenter, whose testimony was corroborative; we are to say whether there was that in the whole testimony of Davis, taken in connection with the other testimony, which might excite reasonable doubt of it at special term, and whether Carpenter was so contradicted by other witnesses, as that belief might be withheld from him. The cross-examination of Davis drew from him statements of his conduct in relation- to the purchase, which showed it unusual, imprudent, and inconsistent with the purpose claimed by him. In addition to this, are all the other facts and circumstances of the case, which show the continued real proprietary connection of Carpenter with the subject matter, although the ostensible ownership was in others.
It can not be said that the judge at special term, erred, in not giving credence to the testimony of Davis,, or that his finding that Davis was not a bona fide purchaser, was against the entire and conclusive evidence-in the case. The case of Fordham v. Smith (44 How. *258 Pr. 372), does not conflict with these views. There the referee disbelieved the witness, and not only discredited his testimony negating an allegation, but found the existence of the fact alleged, in favor of the party who had called the witness, and had thus presented him to the court as credible. Here the judge, on the facts revealed by cross examination, and on the whole testimony in the case, refused to find the affirmative sought to be established by the testimony of the witness, and from the whole testimony, strongly tending to show that Carpenter was the real party in interest, inferred that the action of the witness was not for himself, but in behalf of Carpenter.
It was an inference which might be made from the whole testimony, that Jacob Carpenter, through all the changes of nominal ownership of the claim, and judgment against Stilwell for the rents, was up to, and at the time of the settlement and release, the real equitable owner of them respectively, and that though it was sometimes pledged as a security for indebtedness from him, and some other times ostensibly held by another, yet that he had the right to pay the indebtedness when held by his creditors, and controlled it when held by another not his creditor; and that at the hearing before the surrogate, and before the decree in that court, he was the legal absolute owner of all the right there was in the judgment. We are thus brought to the conclusion that there was no error of law made by the trial court in its findings of fact. It remains to be seen whether with those findings as the basis of consideration, there were errors of law calling for a reversal of the judgment.
It is claimed that the Gilbert judgment is not, by any transaction appearing in the evidence, so satisfied and annulled as to be incapable of enforcement to any extent. The answer to this has been in some measure anticipated in the foregoing remarks. If Carpenter *259 was the owner of the claim, and then of the judgment, subject to Gilbert’s right to enforce the payment of his lien, then Carpenter could take payment from Stilwell and release all the interest which he (Carpenter) had. If Stilwell owned judgments against Carpenter, after the payment by the latter to Wilson of that indebtedness, and before the assignment of the claim to Gilbert, then the judgments were an equitable set-off against the claim, whether in the hands of Carpenter or of Gilbert (Graves v. Woodbury, 4 Hill, 559; Simson v. Hart, 14 Johns. 63). So far as Gilbert was concerned, that right to set-off, was disposed of adversely to StEweU, by the judgment against him, in the action brought by Gilbert. But when the indebtedness to GEbert was paid, and the judgment became freed in the hands of Carpenter from the lien of Gilbert, that set-off existed, and the payment and release applied it in extinction of the judgment. And the right continued, though the judgment was after that assigned (Chamberlin v. Day, 3 Cow. 353; Utica Ins. Co. v. Power, 3 Paige, 365). More especially so against Davis, who was not bona fide.
The appellants are in error in saying on their points, that there was no proof on the trial of the judgments held by StEweE against Carpenter. B. P. StEweE testified to them by name of plaintiffs, date and amount, and stated the gross amount at time of settlement. There was no objection to this mode of proving them. Nor do I understand that it is now sought to sustain the judgment of the court below, on the ground that it is asked in the prayer of the complaint that the judgments held by StilweE, be in this action set-off against the Gilbert judgment. The claim now is, that as those judgments were in the hands of Stilwell or his representative, there was an equitable right of set-off, and that they were in fact set-off, and applied to the extinction of the Gilbert judgment in the hands of Carpenter. *260 The right to set off existed, notwithstanding a subsequent assignment, even if to one paying value (Graves v. Woodbury, supra),—and the action of the parties was as effectual in making the set-off as would have been the action of the court upon.motion. The judgment appealed from, does not make a present set-off, but declares in effect that one was made by the parties.
Nor is this action brought, as is claimed, in review of that judgment. It concedes that the judgment once existed, and seeks to set aside the sheriff’s sale and deed sought to be founded thereon, on the ground that the judgment, having been extinguished, furnished no power to the sheriff to sell. Nor is it brought to review the decree of the surrogate. That is attacked for the fraud of the party procuring it, which it is alleged consists in the concealment of the fact that he was the legal owner of the claim.
Nor is the statute of limitations a defense to the ac tion to set aside that decree for the cause of fraud That fraud was committed, if at all, within the statu tory limit. Nor is it a defense to the action to sei aside the sheriff’s deed. The sale was made in 1863, February 3. The deed was given in 1868. The surrogate’s decree was in 1866, and the concealment was in 1865. This action was commenced in 1869, in January.
' Nor is the plaintiff estopped as to Davis. If- the facts shown would estop her in favor of a bona fide purchaser, they will not in his favor, for he is not that purchaser. He is in reality Jacob Carpenter, and Carpenter had knowledge of all the facts (Wood v. Colvin, 2 Hill, 566).
It is claimed that at all events there was, when the release was executed, an indebtedness still existing from Carpenter to Gilbert, and that to that extent it could not be 'discharged by Carpenter. The release was in *261 January,' 1858, and Gilbert’s debt was satisfied in October of that year. If Gilbert’s interest had been that of an absolute joint owner of the judgment, there might be ground for this position. But he was as a pledgee of it. Carpenter was the owner of the whole, subject to this pledge. His release released the whole, subject to this pledge. When the pledge was redeemed, by the payment of the amount, then the release was effectual upon the whole judgment; not only upon the debt, but upon the costs, for there was no reservation of the costs in Gilbert’s settlement with Carpenter. There was nothing then left of the judgment to support the execution.
It is claimed that the motion to dismiss the complaint made in behalf of Davis, should have been granted. It was put upon the ground that the complaint did not state facts sufficient to constitute a cause of action, in that it does not, as is claimed, avér a personal interest in the plaintiff in the premises described in the sheriff’s deed. It is said that the action is by the executrix of Stilwell, and purely in her representative capacity. The title of the action, in the summons and complaint, is “ Charlotte Stilwell, executrix of Sylvanus B. Stilwell, deceased.” It is to be noted that this title does not declare that she is plaintiff as executrix, but that she, executrix, &c., is plaintiff. Such a statement is deseriptio persones merely (Sheldon v. Hoy, 11 How. Pr. 11, and cases there cited).
If the title does not declare the character in which the plaintiff sues, it may be found from the body of the complaint. There it is alleged that the testator died leaving a will, which has been admitted to probate, in which the plaintiff is made sole executrix and sole devisee, and letters testamentary issued thereon to her; it describes the premises affected by the sheriff’s deed, and avers that the testator died seized in the ownership thereof. The prayer of the com *262 plaint is, that the Gilbert judgment be canceled of record, and that the real • estate sold ■ be declared to have passed to the plaintiff under the will, free from that judgment, and that the enforcement of the surrogate’s decree be enjoined. It is said that the statement in the complaint, that the plaintiff is by the will named sole devisee (though the word in the complaint is made), is incidental. But it is no more so than the statement, that she is made the sole executrix.
It is said that the will is not set out in the complaint, and that it does not appear that the testator devised the lands. But the defendants put in evidence the will, before making the motion to dismiss, and thus supplied those omissions of the complaint. The will, when read, showed that the testator devised to his wife Charlotte, all the rest, residue and remainder of his estate; real and personal, after the payment of his debts, and appointed her sole executrix thereof. The proof thus made, without objection to the shortcomings, if any, of the complaint, was sufficient with the other in the case, in the first instance, to maintain her action as devisee, and to resist the motion to dismiss the complaint, if addressed to that point.
The allegations of the complaint are also as apt for an action brought by the plaintiff as executrix; but taken in connection with the proof, they are not to be read, as confining the action to one by her, in her representative character. The subsequent averments of the complaint, and the prayer for judgment, are applicable to the plaintiff as devisee, or as executrix, as may be pertinent. That she could not join her own right and her right as representative may not be raised here. It was not raised by demurrer, nor answer, nor in any other manner in the trial court.
These considerations would lead to the conclusion, that the sale by the sheriff was void, as being without power to make it; and that the judgment was right in *263 setting it and the sheriff’s deed aside, if the action was alone for that purpose, and by the plaintiff as devisee only. And this I understand to have been substantially conceded in the opinion of Andrews, J., on the former argument.
But the judgment setting aside the surrogate’s de cree is also in review. The two matters are joined in the action. The equities of both are interwoven. There can be no just disposition of them in this action, as will be seen hereafter, unless that disposition deals with both as substantially one matter.
The other matters involved in the action are the decrees of the surrogate’s court. The judgment appealed from, canceled and discharged them for the fraud of Carpenter and others in procuring them. A court of equity may set aside the judgment or decree of another court, when it has been obtained by the fraud of the party (Byers v. Surget, 19 How. U. S. 303. And see Borden v. Fitch, 15 Johns. 121-145). The question of fraud, which is open to examination in such case, is as to something which intervened in the proceedings by which the judgment was obtained (Sample v. Barnes, 14 How. U. S. 70), and it must have occurred in the very concoction or procuring of the judgment, and not have been known to the opposite party at the time, and for not knowing which, he is not chargeable with neglect or inattention (Patch v. Ward, L. R., 3 Chy. App. 203). The fraud must consist in something of which the complaining party could not have availed himself in the court giving the judgment, or of which he was prevented from availing himself thereby fraud (Mar. Ins. Co. v. Hodgson, 7 Cranch, 333 ; Lansing v. Eddy, J. C. R. 49 ; Duncan v. Lyon, 3 J. C. R. 356), which rule may have the reasonable extension, that it must also be something of which he could not have availed himself, to have restrained the proceedings in the court in which the judgment or de *264 cree was obtained, by bringing suit, in a court having power to temporarily enjoin them and to so grant a relief as to make it available in those proceedings (Lansing v. Eddy, supra).
There is a dictum of Lord Loughborough, in Mitchell v. Harris (2 Ves. Jr. 129), which expresses what is doubtless the law, that a bill in equity showing that a judgment at law was obtained against conscience by concealment, would open it to relief in a court of equity (See Medcalf v. Ives, 1 Atk. 63; Lankton v. Scott, Kirby, 358 ; Willlams v. Lee, 3 Atk. 224; Le Guen v. Gouveneur, 1 Johns. Cases, 456), with this qualification or explanation, however—where the fact •withheld was essential to the determination of the suit (Hull v. Blake, 13 Mass. 153).
With these rules before us, we may inquire what are the facts found, upon which the special term adjudged that those decrees were procured by fraud. They are the payment of the claim of Wilson against Carpenter, before the assignment by the former to Gilbert, the ignorance of the plaintiff of that payment until 1864 (in October or November, 1864, the evidence shows it to have been); the ownership in 1858, by Carpenter of the Gilbert judgment; the ownership by the testator of judgments against Carpenter, of greater amount; the agreement to cancel all claims of Carpenter against the testator, on the assignment by the latter of an amount of those judgments equal to that of those claims. The assignment, in pursuance of that agreement, and the release by Carpenter; the subsequent assignment by Gilbert to George Carpenter; that by George Carpenter to Curtis, by which the latter held as the trustee for Jacob; that by Curtis to Markham; that by Markham to Jacob Carpenter, by which the latter got the legal title to the judgment; the concealment of the last assignment from the plaintiff and from the surrogate, and the claim in that court, that Jacob Carpenter had *265 no interest, with intent to deprive the plaintiff of the benefit of her defense and offset; that that court had no jurisdiction to try equitable matters, from which resulted the refusal to consider the plaintiff’s claim there; that all the proceedings in the surrogate’s court were on behalf of Carpenter, and were a fraud upon his settlement with the testator and a fraud upon the plaintiff ; and that there was no amount due on account of the Gilbert judgment.
Of all these facts the plaintiff was informed before the termination of the proceedings in the surrogate’s court, save of the assignment, by Markham to Jacob Carpenter, of the legal title in the Gilbert judgment, and of the concealment of that assignment with intent. If she could not avail herself of them in that court, by reason of the lack of jurisdiction there of equitable matters, it was her duty to have brought her action in a court of equitable jurisdiction, wherein there might have been an adjudication that the claim, for which the Gilbert judgment was founded, and the judgment it-. self were paid, satisfied and released, or that the judgment owned by Stilwell, be set off against the Gilbert judgment. It is not for the plaintiff, or any of the courts which have adjudicated upon these matters, to deny that such would have been the result of such an action. Hence, as to all these facts known to her, and any legal relief from them, the plaintiff falls within some of the rules above stated, which prevent her from maintaining an action to enjoin the enforcement of the decrees. There is left only the fact of the concealment with evil intent by Carpenter on the hearings before the surrogate of his legal title to the judgment, and that is all.
It is of some importance to know just what the plaintiff claimed before the surrogate, and just what was there decided by that court. On December 30, 1865, the plaintiff offered in evidence the records of *266 certain judgments against Carpenter, without any statement of the purpose for which the offer was made. ■The evidence was rejected. The plaintiff then (January 12, 1865), filed an answer to the claim of Markham, who had some time before that, intervened in the surrogate’s court, as the owner of the Gilbert judgment, that answer alleging that that judgment was the prop-, erty of Carpenter, when Markham purchased the same, and that then and for some time previous while Carpenter owned it, the estate owned judgments against Carpenter to an amount exceeding it, which were and are a legal offset. Upon this the surrogate decided that he must be governed by the legal title to the judgment, and refused to inquire into the latent equities Carpenter might have in the judgment or to make an offset against them if they existed. The executrix then offered to show that Carpenter was, in point of fact, the owner of the judgment at the time of the assignment to Markham, and that the judgments theretofore offered in evidence, were held by the estate of Stilwell against Carpenter, at the time he was the owner. The counsel for the creditors stated that he made no objection to proof that Carpenter was the legal owner, but did object to any parol proof tending to show that Carpenter was the equitable owner, and insisted that the surrogate must be governed by the legal title to the judgment. So that it appears that the executrix had opportunity to have proved there, that Carpenter was the legal owner of the judgment. It is to be observed that there was no offer there, to show that Carpenter had executed to Stilwell a full release of all demands ; nor a claim that that release covered the Gilbert judgment and extinguished it; though that release was just as applicable to the equitable interest of Carpenter in that judgment, as to his legal interest, and would have been as prevalent to extinguish it. What she offered to prove, and what was refused-to her, was to show that *267 Carpenter was an equitable owner of the judgment and that the estate of the plaintiff’s testator owned judgments against him, which she asked to have there set-off in equity. It is to be observed too, that the complaint in this action does not specifically allege concealment by Carpenter of his legal title, nor distinctly aver that, as fraud in procuring the decrees of the surrogate, nor does the prayer of the complaint specifically and pointedly ask for the setting aside of those decrees, on the ground of fraud in procuring them. Doubtless the prayer for alternative relief was sufficient to enable the court to grant other relief than that specifically asked. Nor was there any objection at special term to the admission of the evidence on which it was found that Jacob Carpenter was the legal owner of the judgment in December, 1864; and the main evidence on which it was found more directly that he concealed that fact before the surrogate, was put into the case by the defendants.
So that the claim of the plaintiff to set aside the decrees of the surrogate was properly submitted to the special term upon all the facts which have been found by it. But that claim rests upon the alleged fraud upon the surrogate’s court, in the concealment by Carpenter of his legal title to the judgment. The plaintiff and her advisers knew as well then, as since then, of the release of all claims. But she did not offer to prove it; nor did she make claim to any legal consequence from it. The position which she was prevented from taking in the surrogate’s court by the alleged fraud, was this: that the judgments owned by the estate should be set off by the surrogate, against the judgment owned legally and equitably by Carpenter.
She may claim that the further position would have been taken, that the release in full was a payment and extinguishment of the judgment. It is here, that it is so significant that no mention of this release appears *268 to have been made to a court until the commencement of this action. It is claimed by the plaintiff that she sought also to show before the surrogate that the judgment was held by Gilbert, and Curtis, and Markham, in trust for Carpenter, and in fraud of the testator. There is an allegation in the complaint which may be so construed. And an omission in the answer of Carpenter, and in that of Markham, would technically cover that allegation, -but it is denied by Davis in his answer. The evidence in the case shows, however, just what was insisted upon by the present plaintiff, before the surrogate. It does not appear that any such position was there taken. If the admissions of the pleadings conflict with the evidence, the latter must prevail, especially where the admission is that of some of the defendants and not of all, although the issue presented by the denial of one defendant is not material as to him. The evidence must control, where it is in opposition to the allegations and admissions of the pleadings.
If it be conceded, that in a court having a larger jurisdiction than the court of a surrogate, the alleged concealment would have been a fraud ; it is yet to be asked was it a fraud in that court t If the only use to have been made of the fact, if it had been known, was . to base upon it a demand for a set-off of judgments, did the surrogate’s court have jurisdiction to make that set-off ; and if it did not, can it be said that the concealment of the fact was a fraud upon the court and the litigant in it 1 A surrogate’s court is one of limited jurisdiction. Though there seems to have been at one time, some conflict of views whether it could pass upon the validity of a claim against an estate of a deceased person ; it has been held by this court, that the surrogate may not try and determine the validity of a claim which has been rejected by an executor (Tucker v. Tucker, 4 Abb. Ct. App. Dec. 428). The judg *269 ment in that case is put upon the ground that a surrogate’s court may not entertain a litigation as to every or any demand which may be presented on an application for an accounting. The reason for the judgment, and the language of some of the cases cited in it as authority, are against the power of a surrogate’s court to entertain a question of set-off. It is clear that it cannot question the justice or validity of the judgments of other tribunals of competent jurisdiction over the matter involved in them. Nor, if it cannot try the validity of a demand disputed by the executor, can it by parity of reasoning, try the question of the existence of a judgment of another court or the assertion of the executors of a set-off against it. The judgment is prima facie a valid and subsisting claim against the estate, and for the surrogate’s court to entertain an allegation of a set-off and to hear and determine the existence of it, and to make application of it, is to exercise power which has not been given to it. The claim to a set-off of one judgment against another is a matter of equitable cognizance, and is treated as such in all courts which have the power to entertain it. A court of equity may not refuse to entertain a complaint thereof. But a court of law, in the exercise of its equitable power, upon motion, may or may not adjudge a set-off, according to the varying circumstances addressing its discretion. A surrogate’s court has not such power in equity as enables it to step aside from its duty of distributing the estates of deceased persons to entertain and hear and determine what is tantamount to an action in the equity for the set-off and application of different judgments.
It is a rule, too, in courts of law, that the motion to set off a judgment must be made to the court which gave the judgment against the party moving for the set-off (Cooke v. Smith, 7 Hill, 186). Hence it would follow, that had Carpenter avowedly come into the *270 surrogate’s court as the creditor demanding the accounting, and had he disclosed the fact that he had the legal title to the judgment, yet disputing the set-off of the judgment of the testator, the surrogate would have had no jurisdiction to entertain the question, and the plaintiff in this action must have obtained a suspension of the proceedings in' the surrogate’s court, to have brought her action in equity or made her motion at law, in which the conflicting equities of the parties could have been adjusted. It may not be needed that we say what would have been the effect of the production in evidence, of the release by Carpenter. It was not offered nor mentioned. Nor can we assume that it would have been, had the fact of Carpenter’s legal title been made known. It was not set up as showing a payment and extinction of the judgment, until after the bringing of this action, and is not brought to notice in the complaint as having that effect.
The litigation before the surrogate and on the appeals from his decree, so far as that litigation went, upon questions other than as to the details of that decree, was, on the theory of the plaintiff, that that tribunal had the power to set off the judgment of Stilwell against that of Carpenter. But concede, that if the fact had been disclosed in that court, that Carpenter was the legal owner of the judgment, the plaintiff, upon such disclosure, would have made proof of the release, and would have claimed that thereby the judgment, when it came into the hands of Carpenter as a legal owner, was extinguished; was that fact vitally essential to such a claim, and for a determination of it favorably to the executrix (Hull v. Blake, supra) ? Would the release have had any greater effect by reason of Carpenter being the legal owner, than it would have had if he had been but the equitable owner, or than it did when he was but the equitable owner % Did not the release have its full effect upon the judgment, be *271 fore it was assigned by Curtis to Markham, before it was assigned by George Carpenter to Curtis, before it was assigned by Gilbert to George Carpenter % Did Markham’s assignment to Jacob Carpenter; of the apparent legal title, give any greater force to the judgment in his hands, than his previous equitable ownership had given to it \ The release had its full effect upon the judgment as soon as Gilbert was paid his indebtedness, and thereby Carpenter again became the owner of the claim, then merged in the judgment, free from any lien. Then, according to the theory of this action, as Jacob Carpenter in reality owned the whole of the judgment, and no one having it in seeming ownership, had any right to withhold from him the legal title to it—then, by the release it was extinguished, to the extent of his capacity to extinguish it. As he owned it all, he had capacity to extinguish it all. He did extinguish it all. That effect of that release was not increased, nor any other effect of like nature added by the acquisition by Carpenter afterwards of the nominal, as well as the real ownership. Even if it be held that Markham gave to Carpenter a valuable consideration for the assignment from Curtis—Markham did not thereby get any right which would prevail against the rights of the plaintiff, by reason of her ownership of judgment against Carpenter and by reason of the release (4 Hill, 559, supra); and hence Markham gave no new or further right to Carpenter, when the assignment of the legal title was made, so that the disclosure of the fact that Jacob Carpenter held the legal title by assignment, was not essential to a determination of all the questions raised in the surrogate’s court.
Had the plaintiff proven the release, its effect would have been no different upon the judgment owned by Carpenter, as legal owner, than it would have been if he had been only the equitable owner. And this would *272 have been so, had there been jurisdiction in the surrogate’s court to have passed upon the effect of the release upon the judgment. Whether there was or was not that jurisdiction- there, it is not needed that we now declare. And so it would have been in any other court, in which the plaintiff might have been advised to seek relief. She did not prove, nor mention the release before the surrogate. This omission was hers, not the defendant’s. Nor did she seek to have the effect of it adjudicated upon, in any other court, and a restraint laid meanwhile upon the proceedings in the surrogate’s court. This was not an omission caused by an ignorance of fact. It was a neglect to avail of legal rights which were just as perfect upon the facts then known to her, as upon those facts, if reinforced by the disclosure of the fact which was concealed. I say nothing as to the effect of the decree of the surrogate, under such circumstances. That is fully and forcibly discussed by my learned brother Akdbews, J., in the opinion delivered on the former argument.
I think that the error which was made, was this ; not that upon the facts as found it was not against conscience for Carpenter in the name of Curtis first, and of Markham afterwards, to institute and push proceedings in the surrogate’s court for the payment of the extinguished judgment; for upon the facts as found, a court of equity would have declared that the judgment was paid, and by the settlement and release extinguished, and would have enjoined perpetually the party from proceeding to collect it; but that there was an omission to perceive and to hold, that with all the facts known to the executrix, which were essential to defeat the purpose of Carpenter, and unavailed of by her, there was not that fraud committed by him upon the surrogate’s court and upon the executrix, which will authorize a court of equity to set aside a solemn adjudication of a competent court, made in an *273 action in which, the party now complaining has had her day and been fully heard. The evil has come upon the plaintiff in this action, not from ignorance of a concealed fact, but from an omission to avail herself of those which she knew ; and which were all that were essential to seek and obtain the appropriate relief, in a court competent to grant it. That knowledge and that omission bring the plaintiff in this action within the rules above cited or laid down, and preclude her from a judgment affecting the decree of the surrogate’s court.
We cannot agree with the conclusion of law of the special term, that the decree of the surrogate’s court was procured by fraud, and the judgment appealed from, so far as it is based upon that conclusion, must be reversed.
The case then stands in this peculiar position, that the plaintiff, as executrix, has accounted for the assets of the estate, and has been allowed in her favor the amount which the lands brought, upon the sheriff’s sale. By that decree, all the parties to it are bound, and it is now a final and conclusive adjudication between them. But if the sheriff’s sale and deed are set aside, then the consideration for them, the amount bid, which has been allowed to the executrix, is lost to the-creditor in the surrogate’s court; the plaintiff, as devisee, has the land restored to her, discharged from the judgment, and the plaintiff, as executrix, keeps the benefit of the sum bid. This is not a just and equitable disposition of the litigation between the parties. It seems more proper that the whole judgment should be reversed, and that the issues made by the pleadings and those which arose upon the trial, apart from the allegations of the pleadings, be once more tried, in a court of original equity jurisdiction.
All the judges concurred; Rapallo and Atideews,. JJ., in result.