Kennedy, J.
—The complaint is for slander and slanderous utterances charged to have been made by the defendant of and concerning the plaintiff. The following are the facts stated and words alleged: “The plaintiff on the 19th day of January, 1878, deposited in the post-office at Rome, N. Y., a letter directed to Mrs. Edward B. Nelson, which letter con- *791 tained printed matter, and the matter and contents of said letter were obscene and indecent; that said letter was postmarked Rome, N. Y., January 19, 1878, and had upon it a two-cent postage stamp canceled; that the address on said letter was in the handwriting of this plaintiff, although she had attempted to disguise the same; that she was the author of said letter and contents;” and that the defendant had said to divers persons, among them, B. J. Beach, that “she,” the plaintiff meaning, “ had sent said letter and contents to his wife, Mrs. Edward B. Nelson, through the Rome post-office, and that the address on said letter was in the handwriting of the plaintiff.”
The complaint further avers that she, the plaintiff, was at the time in the employ of the “ Central New York Institution for Deaf Mutes,” situate at Rome, N. Y., and that the defendant exhibited and showed the said letter and contents to said B. J. Beach, and other members of the executive committee of said institution, and that by reason of said statements by defendant, she, the plaintiff, was discharged from her place and employment by said executive committee.
The answer of the defendant is a general denial.
And for a further answer he avers that said institution was, and for a long time previous to the alleged wrongs complained of, had been a corporation duly organized under the laws of the state. That the defendant was, at that time, and for some time previous thereto, had been superintendent of said institution, and that the affairs of the same were controlled and managed by a board of trustees, who appointed an executive committee, among the duties of which was to hire and discharge teachers, employes and other attendants and to care for its good and general welfare.
At the time of commission of the grievances complained of such executive committee consisted of Edward Huntington, B. J. Beach, D. P. McHarg, John G-. Bissell and B. Huntington Wright.
That about the 19th day of January, 1878, there was received at his house on the grounds of said institution through the mail a sealed envelope bearing the Rome postmark directed on the outside in an apparently disguised handwriting by a female hand to Mrs. Edward B. Nelson, Rome, N. Y., the defendant’s wife. When opened the envelope was found to contain a paper partly printed and partly written of a grossly vulgar and obscene character. Same was without signature. That he, defendant, was well acquainted with the plaintiff’s handwriting, and upon examination became satisfied that the address on the envelope was written by the plaintiff; that he thereupon submitted the same without malice but in good faith to and in the belief that the plaintiff was the one who sent the same, as in duty bound to do to said B. J. Beach, who was at the time chairman of said executive committee. Upon con *792 sultation with Beach, and in order to determine if possible who wrote the address on said envelope, it was concluded by said Beach to send the same with certain handwriting known to be the plaintiff’s to J..E. Paine, an expert in regard to handwriting of wide reputation in the city of New York, to obtain his opinion. Same was sent, and Paine afterward, and about Feb. 12, 1878, made his report to Beach in writing, and to the effect that the same person who wrote the matter known to the plaintiff, wrote the directions on the envelope. With this evidence of the plaintiff’s guilt, and on the 18th day of February, 1878, the executive committee had a meeting for the purpose of acting upon the matter, and said committee being satisfied that the plaintiff was in fact the author of said communication, thereupon, by formal action, discharged the plaintiff as one of the employes in said institution. The answer further avers that his action in the premises was privileged, he acting in good faith and upon probable cause.
Upon the trial of the issue it appeared that the Central New York institution for Deaf and Dumb was a charitable Corporation; that during the years 1877 and following, the defendant, Nelson, was superintendent of it, and that the plaintiff in 1877, and down to her dismissal in February, 1878, was employed therein as superintendent of the sewing department. Some time in the summer of 1877, the defendant was married, and made a tour of Europe. He returned the latter part of that year, and commenced to live with his wife in a house upon the grounds belonging to said institution. On the evening of January 19, 1878, there was received through the mail, an envelope duly sealed, and bearing the Rome postmark, addressed to Mrs. Edward B. Nelson, the defendant’s wife, postpaid. .
It was handed by the defendant, unopened, to his wife as a part of her mail. She opened it and found enclosed obscene printed matter. On discovering its contents she handed it to her husband, he looked at it and on the following day he called upon Mr. Beach, the chairman of the executive committee of the institution, and showed him the envelope and contents, at the time expressing his belief that the address on the envelope resembled the plaintiff’s handwriting with which he was entirely familiar.
After com paring the writing on the envelope with writing in their possession, known to be the plaintiff’s, it was upon consultation agreed that before any charges were made against the plaintiff, and to avoid doing unnecessary wrong to her, that further inquiry should be made. To that end Mr. Beach sent the envelope and matter enclosed to one J. E. Paine, an expert in handwriting in the city of New York. With it were also sent papers conceded to be in the plaint *793 iff’s handwriting, and his opinion was asked. On the 12th day of February, 1878, Paine made a written report to Beach, to the effect that the same person who wrote the writing conceded to have been done by the plaintiff, wrote the address on the envelope containing the obscene matter, stating in full his reasons for the conclusion.
After receiving this report and duly considering the same, the said executive committee met on the 19th day of February, 1878, for the purpose of further action and the plaintiff was called before it. The members present were Messrs. Beach, Huntington, Bissell, McHarg. Defendant Nelson was also there.
The plaintiff, in her testimony, states the following to have taken place at that time:
“I went into the office and stepped up to Nelson’s desk; Mr. Beach stepped forward and handed me a letter and said: You sent this; I took the letter in my hand, the one now shown me; Beach says Nelson says you sent this; I at first understood him to say to Mr. Nelson; I said I never sent it to Mr. Nelson; Beach says you see it is to Mrs. Nelson; I said I never sent it; Beach said it was a dirty, obscene letter sent to Mrs. Edward B. Nelson, and if I did not write it and sent it who did? I said I believed it was a contrived plan to get me out of the institution; that he had been trying to get me out, and this was his last resort; Beach said where were you on this day? I said I can’t tell you until I can find dates to show; Beach said I know where you were, you were in Utica and returned in the evening; I said I have been to Utica, but whether. on that day or not I can’t tell until I find dates to show; Beach says this is a plain postmark Rome; I said if this was the day I was in Utica I was not in Rome; Beach turned to Nelson and said, ‘You received this letter about seven p. m., did you not? ’ Nelson answered, ‘Yes; and it was a dirty letter,’ and had caused him and his wife much pain, and he knew I wrote the letter; I then examined the envelope and said the writing on it looked like Miss Randall’s, then a pupil in the institution; I took the printed slip partly out of the envelope; on the edge was a margin about an inch wide; there was some writing on it; I said, 'That is Mr. Nelson’s handwriting; ’ Mr. Beach stepped to my side and' snatched it out of my hand and put it in his pocket and said, ‘ it is not fit for you to read.’ ”
The foregoing is in substance all the evidence given by the plaintiff upon which the suggestion made that Nelson acted in bad faith and without probable cause, in bringing the question of the authorship of the communication before *794 the executive committee of the institution, is sought to be supported.
It will be perceived that such support rests upon the evidence of the plaintiff, that when she partly drew out the paper enclosed in the envelope she saw some handwriting on the margin, which she thought she recognized as that of the defendant, thereby creating the inference that it had been in the defendant’s possession before it was mailed to his wife.
The following witnesses testify that at the time the paper was shown the plaintiff there was no writing of any kind upon the margin, and that the same was in the same condition in all respects at that time as when produced upon the trial: Edward B. Nelson, Jessie E. Nelson, his wife, Bloomfield J. Beach, chairman of the board of trustees, as well,. also, of the executive committee of the institution, John Gr. Bissell, Don P. McHarg, members of said committee, and who were each present when the interview between the plaintiff and the committee took place. Each of them also testify there was no writing on the margin of the paper. The envelope and contents were sent to the expert, Paine, in January, and were returned by him with his report on the 12th day of February, the committee meeting being on the 19th of the same month, and he having examined the paper with the care necessary to define the writer, testifies that when the paper was in his hands there was no writing on the margin.
On the first trial of the case the plaintiff testifies upon the subject of the writing on the margin substantially as follows: “I think I saw some writing on the edge of the printed paper, when I partly took it out, but will not be positive.” [1] On this trial she testified: “I don’t think I mentioned the margin on the paper before the last trial,” this being the fourth.
Examining the evidence with a view to determine what legitimate conclusion should be drawn from it, the first suggestion which presents itself is “improbability,” which necessarily attaches to the statements made by the plaintiff. The defendant had but recently married his wife, and to suppose he would write upon the margin of this obscene and scandalous document and deliberately enclose the same in an envelope and address and mail to her, bearing this evidence upon its face of bis own depravity, is beyond belief.
If the testimony of the plaintiff is true, the defendant, with this evidence of his own guilt, placed this same paper in the hands of Beach for examination. He knew him as an astute lawyer, familiar with handwriting, a gentleman of the highest character, and one whom the defendant had *795 a right to behove would be swift to discover and denounce the fraud if it had been perpetrated. With equal improbability we are asked to believe that the same paper with this telling evidence against him, the defendant submitted to the examination and criticism of Paine, the expert, and afterward to the executive committee, when in session. In my judgment, the probabilities which challenge and tend to refute the truth of the plaintiff’s testimony in this regard are too strong to be overcome by her statement, and lead to the irresistible conclusion that she must be mistaken. Stilwel v. Carpenter, 2 Abb. N. C., 238; Seibert v. E. Railway Co., 49 Barb., 583-587.
In giving her evidence she is necessarily influenced by the important interest which she has, and which she must feel she has in the issue involved.
The defendant, Nelson, has, perhaps, as great an interest, and his wife must be regarded as in full sympathy with him in this respect, but Mr. Beach, Mr. Bissell and McHarg, of the executive committee, are each gentlemen of high standing in the community, and the truth of whose evidence cannot easily be doubted, are disinterested, and their connection with the matter was and is only that of men having an important public duty to perform, and who can have no other purpose than to discharge it conscientiously, and with due regard to the rights of the respective parties. Paine, who appears without interest, and whose character is in no way impaired, also speaks upon the question.
These all testify that there was no writing on the margin of the paper at the time of which the plaintiff speaks.
The plaintiff, upon the first trial, and before the importance of connecting the defendant with the sending of the. letter had been suggested, speaks with doubt and uncertainty as to there having been any writing on the margin of the paper, and did not even mention there being a margin on it until the trial preceding this.
It is not, perhaps, unjust to say that it is not impossible that her memory in regard to this particular matter has been created by long reflection, and after learning the importance of the evidence as bearing upon her success in the case.
The finding of the jury, as it must have been found in order to reach the verdict which it did, that there was writing by the defendant on the margin of the paper enclosed in the envelope, cannot be sustained upon any available ground, or as a legitimate or fair deduction from the evidence as given. Boyd v. Colt, 20 How., 384; Lynch v. Pyne, 42 Superior Ct. Rep., 11-14.
When the paper in question was produced upon the trial, there appeared to be written in pencil across it, not along *796 the margin. (Quotation from circular is here omitted.) No suggestion was made that the plaintiff wrote these. The occasion of the communication by the defendant to the committee was privileged; he owed them the duty, and would have been derelict had he omitted to perform it. Odgers on Libel, p. 182.
I was inclined to think upon the trial that this was an absolute privilege, and that any communication made by the defendant to the committee was a privileged one, and that no recovery could be had in any view of the case.
When the case was before the general term that court seemed to view the privilege as a qualified one, and that if it appeared or there was satisfactory evidence given of malice, bad faith or a want of probable cause, that then the defendant might be hable, and it was upon this interpretation of the law that the cause was tried.
The defendant held the position of superintendent of a public institution, and was responsible for the proper administration of its affairs, and especially for those relating to the moral as well as physical care and training of its inmates, subject, nevertheless, to the supervision and control of the board of trustees and its executive committee. Holding this responsible position it was his duty, if he honestly believed that an employe under him had been guilty of conduct unbecoming her and the position she occupied, to report the same to his superiors, the committee, and if in making such report he acted in good faith and with probable cause. Although such suspicion turned out to be groundless, he would not be liable, since such action and communication was privileged within well-settled rules. The occasion of the publication repels the inference of malice. Van Wyck v. Aspinwall, 17 N. Y., 193, and cases cited.
In the case of Harrison v. Bush (32 Eng. Law and Eq. R., 173), cited in the above case, Lord Campbell is made to say: •‘A communication made bona fide upon any subject-matter in which the party communicating has an interest or in reference to which he has a duty, is privileged, if made to a person having a corresponding interest or duty, although it contains criminating matter which, without this privilege, would be slanderous and actionable. Duty in the proposed canon cannot be confined to legal duty, but must include moral and social duties of imperfect obligations.” The plaintiff, in her evidence, makes the defendant say “ I know you wrote it,” in the presence of the committee. This utterance, had it been made to them with the charge, would have been privileged, if any part of the communication was, and it was equally so when spoken to them in the plaintiff’s presence, and Lthereby made a part of it; and this is so if the utterance can be regarded as a positive statement, rather than simply the expression of an opinion. I am disposed to think the latter is the true construction to be given *797 it. In the case of Humphrey v. Stilwell (2 F. & F., 590), it was held when the defendant, who was a life governor of a public school to which the plaintiff supplied butchers’ meat, stated to the steward of the school, whose duty it was to examine the meat, that the “ plaintiff had been known to sell bad meat,” that the communication was privileged.
It was held .to be the duty of an under master in a college school to inform the head master that reports had been some time in circulation imputating habits of drunkenness to the second master. Dunn v. Marshall (Cockburn, C. J.), Times of November 26, 1877.
The law is so held in this case. Halstead v. Nelson, 36 Hun, 150; O'Donaghue v. McGovern, 23 Wend., 26, and other cases cited on page 155.
Malice is defined as an incident or wicked motive, which induces the defendant to defame the plaintiff, and the plaintiff must prove malice by some evidence besides that which merely proves the falsity of the statement. Caulfield v. Whitworth, 16 Week. Rep., 936.
That the defendant was mistaken in the words spoken confidentially, taken alone, furnishes no evidence of malice. Lewis v. Chapman, 16 N. Y., 369; Vanderzee v. McGregor, 12 Wend., 546; Fowles v. Bowen, 30 N. Y., 20.
If the evidence produced is equally consistent with either the existence or non-existence of malice, the court should stop the case, for there is nothing to rebut the presumption which has arisen in favor of the defendant from the privileged occasion.
The only case where extrinsic evidence of malice can be necessary is where the occasion of speaking the words show that they are prima facie excusable as being privileged. Root v. Lowndes, 6 Hill, 520.
The relations existing between the plaintiff and defendant were friendly, as evidenced by the letters from her to him of date of July 11, 1877, and to committee November 5, 1877. No change in the feeling then exhibited is shown to have taken place and no possible motive for the existence of malice on defendant’s part toward the plaintiff appears.
The question involved did not of necessity require that it should appear that the plaintiff actually addressed and sent the matter. The question is, had the defendant probable ground to believe she sent it.
After the matter had been laid before the committee and the suspicion created that the plaintiff was the guilty person, means were taken, and such as I think a prudent man would, under like circumstances, have adopted to verify the truth of the same, and until that was received through *798 the report of the expert no charge was made and no other or different action taken.
When that came to hand the plaintiff was summoned before the committee and then she was charged by Chairman Beach with having sent the communication.
The important question in the case is, did the defendant have probable cause to justify his action? Unless there was evidence, satisfactory to show that the defendant had some knowledge or reliable information that the plaintiff did not send the envelope, and therefore that he acted in bad faith, and without probable cause, he was fully justified in what he did, and by doing it he incurred no liability to the plaintiff.
The only evidence showing or tending to show this is that of the plaintiff before referred to, that there was some writ-' ing on the margin of the enclosed paper which she thought was written by the defendant and which was refuted by the evidence and in the manner before referred to.
In my judgment the jury must have misconstrued the evidence or failed to give it its legitimate effect, in arriving at the conclusion they did. The verdict then being clearly against the weight of the evidence, but one duty is to be performed, and that is, to set it aside and grant a new trial. Conrad v. Williams, 6 Hill, 444.
This verdict, if allowed to stand, would be not simply unjust to the defendant, but as a precedent, is one that would be likely to seriously interfere with a proper discharge of duty on the part of those innumerable persons who occupy positions similar to that of the defendant, and upon the due performance of which the welfare and, perhaps, safety of many depend.
It would seem that less harm would likely arise from the adoption of a rule that communications of this nature are absolutely privileged, than will be in holding that the privilege is qualified, and that the party making it may be subject as to liability to the infirmity in memory of the complaining person, or to the fraudulent manufacture of a case, if want of probable cause to meet the purpose of an unjustifiable prosecution, as it may well be supposed might sometimes happen.
My conclusion is that the verdict should be set aside and a new trial granted, with costs to abide the event.
An order to this effect will be entered.