THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Appellant, *v.* JOHN BRADY et al., Respondents.

No court has authority to vacate and set aside a judgment of a court of co-ordinate jurisdiction upon the ground that the contract upon which it was based was fraudulently obtained, or that there had not been an honest and fair performance thereof, in the absence of proof that the defendant in the action wherein the judgment was obtained was prevented by some act or contrivance of the plaintiff, or by some accident unmixed with negligence of himself or his agents, from prosecuting his defense therein.

The fraud which will authorize one court in a collateral proceeding to revise the judgment of another court is a fraud practiced in the procurement or concoction of the judgment, by which the defendant was prevented from availing himself of some defense.

Ignorance of facts constituting a defense does not excuse the omission of a party to make it, or entitle him to the aid of equity, unless it can be shown he could not have acquired the information by diligent and careful labor in preparing the cause for trial.

(Argued June 21, 1889; decided October 8, 1889.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made May 6, 1889, which affirmed various interlocutory judgments, entered upon orders sustaining demurrers interposed by the defendants to the plaintiffs' complaint, and affirmed the orders upon which said judgments were entered.

The substance of the complaint is set forth in the opinion.

*D: J. Dean* for appellants. The complaint states facts sufficient to constitute a cause of action entitling the plaintiff to an injunction. (Story on Equity, § 885; *Wilkinson* v. *Flowers*, 75 Am. Dec. 78; *Wilkinson* v. *F. N. F. Ins. Co.*, 72 N. Y. 499–504; *Dinsmore* v. *Neresheimer*, 32 Hun, 204; *Stanton* v. *Embry*, 46 Conn. 65; *Weaver* v. *Poyer*, 70 Ill. 417; *Walker* v. *Heller*, 90 Ind. 198; *Hatch* v. *C. Nat. Bk.*, 78 N. Y. 487; *Stuyvesant* v. *Mayor, etc.*, 11 Paige, 414; *Laight* v. *Morgan*, 1 Johns. Cas. 429; *Kimberly* v. *Sells*, 3 Johns. Ch. 467; *Livingston* v. *Livingston*, 4 id. 293; *Whitbeck* v. *Edgar*, 2 Barb. Ch. 106; *Livingston* v. *Story*, 9 Peters, 632.) The complaint states the nature of the evidence and the reasons why such evidence could not have been produced before in sufficient detail to satisfy the modern rules of pleading, and a demurrer to it should have been overruled. (*Looney* v. *Hughes*, 26 N. Y. 514, 519; *Greer* v. *Mayor, etc.*, 1 Abb. [N. S.] 206; *Seavor* v. *Mayor, etc.*, 7 Hun, 331; *Lunney* v. *Mayor, etc.*, 14 Week. Dig. 140; *Brooks* v. *Mayor, etc.*, 12 Abb. N. C. 350.) The rule laid down by the court below, that the complaint must state the facts with the same detail required in an affidavit to be presented to the court as a preliminary to filing a bill of review, is not supported by the decisions under modern equity practice. (*Davis* v. *Tileston*, 6 How. [U. S.] 114; *De Bois* v. *Meek*, 50 Am. Dec. 491.) The rules of the old equity practice are not controlling in determining the sufficiency of a pleading under our New York Code. (*Millikin* v. *W. U. T. Co.*, 110 N. Y. 400; *Emery* v. *Pease*, 20 N. Y. 62, 64; *Marie* v. *Garrison*, 83 id. 14, 23; *Lorillard* v. *Clyde*, 86 id. 384; *Sistare* v. *Olcott*, 22 N. Y.

S. R. 564; *Seeley* v. *Engell*, 13 N. Y. 524; Code Civ. Pro. § 546; *Hall* v. *Bank*, 49 N. Y. 627.) The issues raised by the evidence now sought to be presented to the court were not before the court when the former judgments were entered. (*Reilly* v. *Mayor, etc.*, 111 N. Y. 473.) The contract would not have been awarded to Brady except for these fraudulent misrepresentations made by his procurement. (*Walsh* v. *Mayor, etc.*, 22 N. Y. S. R. 308.) There is no force in the suggestion that the court is without power to grant the relief sought herein on account of the length of time that has elapsed since the judgments were rendered. (*Dinsmore* v. *Adams*, 48 How. 274; *Hatch* v. *C. Nat. Bk.*, 78 N. Y. 487.)

*L. Laflin Kellogg* for respondents. The complaint of the plaintiff does not state facts sufficient to constitute a cause of action. (Code Civ. Pro. § 1002; *Anderson* v. *Roberts*, 18 Johns. 533; *Simpson* v. *Hart*, 4 id. 77; *Williams* v. *Montgomery*, 60 N. Y. 648.) Even if the court of equity could be called upon to interfere for the purpose of obtaining a new trial, the plaintiff has not stated facts sufficient to enable it so to act. (*Adams* v. *Bush*, 1 Abb. Ct. App. Dec. 7; 2 Abb. Pr. [N. S.] 102; *Schultz* v. *T. A. R. R. Co.*, 47 N. Y. Super. Ct. 285; *Darby* v. *Elwood*, 67 Barb. 359; Story's Eq. Plead. §§ 412, 413; *Wiser* v. *Blackley*, 2 Johns. Ch. 488; *Livingston* v. *Hubbs*, 3 id. 124; 2 Daniell's Ch. Pr. [5th Am. ed.] 1578; *Earl of Oxford's Case*, 1383; 2 White & Tudor's L. Eq. Cas.) The former adjudications upon this same contract, and between the same parties, afford a perfect bar to the prosecution of this action. (*Smith* v. *Smith*, 79 N. Y. 634; *Perry* v. *Dickerson*, 85 id. 345; *Jordan* v. *Van Epps*, Id. 427; *Tuscar* v. *O'Brien*, 68 id. 446; *Riggs* v. *Purcell*, 74 id. 370; *Palmer* v. *Hussey*, 87 id. 303; *N. Y. C. R. R. Co.* v. *Harold*, 64 How. 89; *United States* v. *Throckmorton*, 98 U. S. 61; *Rogers* v. *Rochester*, 21 Hun, 44; 86 N. Y. 623; Story's Eq. Juris. §§ 1571, 1575, 1581; *Leavitt* v. *Wolcott*, 95 N. Y. 212; *Ross* v. *Wood*, 70 id. 8; *Flower* v. *Lloyd*, 26

Moak's Eng. Cas. 739 ; *Marriot* v. *Hampden*, 7 D. & E. 265 ; *Marine Ins. Co.* v. *Hodgson*, 7 Cranch, 366.) Plaintiff is not entitled to relief by injunction to prevent the judgments being given their legal effect by being offered in evidence. (*Leonard* v. *Williams*, 9 Johns. 233.) The claim in the complaint that the judgment could be set aside on account of the constructive fraud in the unbalanced character of the bids cannot avail the plaintiff in this action. (*Reilly* v. *Mayor*, etc., 111 N. Y. 473.) The contract for Ninety-fifth street, the basis of the judgments, cannot be set aside as fraudulent. and void. (*People ex rel. Lunney* v. *Campbell*, 72 N. Y. 498 ; *Baird* v. *Mayor, etc.*, 83 id. 254.) The contract cannot now be set aside in any event, for the reason that the plaintiff having accepted the work under the contract and the street itself and devoted it to public use, is not in a position to restore the defendant contractor to his original *status*. (*Baird* v. *Mayor, etc.*, 96 N. Y. 567.)

RUGER, Ch. J. The questions in this case arise upon demurrers to the complaint, interposed by the respective defendants, alleging that it does not state facts sufficient to constitute a cause of action. The complaint purports to be a bill in equity, asking that several judgments, theretofore recovered by some of the defendants against the plaintiff, be. vacated and set aside; that they be adjudged inoperative as adjudications between the respective parties in any subsequent litigations; that certain actions pending in the Supreme Court between some of the defendants, as plaintiff, and the said plaintiff, as defendant, to recover alleged balances due on contract, be perpetually stayed, and that an accounting be had between the plaintiff herein and the several defendants, in respect to work done under such contracts, and judgment for the parties entitled thereto according to the account thus found. The relief demanded is predicated upon allegations. of fraud against John Brady in obtaining the contract on which the judgments were procured, and also frauds in its performance. The frauds alleged relate wholly to the cause of

action tried, and not to the means employed in obtaining the judgment sought to be set aside.

The complaint proper is exceedingly voluminous and is much extended by the addition thereto, as an appendix of the proceedings, evidence, affidavits and other documents used in several actions resulting in the judgments now sought to be vacated. It was apparently drawn with a view of presenting all of the facts in the case, for the purpose of securing a final decision as to the matters in controversy between the parties without other litigation. The action grows out of transactions between the plaintiff and John Brady in respect to the construction of a street, which, concisely described, are substantially as follows: In March, 1883, the plaintiff ordered Ninety-fifth street, between Tenth avenue and Riverside drive, to be regulated, graded, curbed and flagged. A surveyor was thereupon duly appointed to make the necessary surveys and estimates of the work required to be done for the purpose of advertising the letting of a contract for its performance, and the supervision of the work to be done thereunder. Such estimate was made and showed one thousand nine hundred and thirty cubic yards of earth excavation; twenty-one thousand five hundred and forty cubic yards of rock excavation; two thousand eight hundred and fifty lineal feet of curb stone, and ten thousand one hundred and twenty-five square feet of flagging, as the quantities of the respective kinds of work to be done. The contract was advertised under proposals, which stated that "as the above-mentioned quantities, though stated with as much accuracy as is possible in advance, are approximate only, bidders are required to submit their estimates upon the following express conditions, which shall apply to and become part of every estimate received: 1. Bidders must satisfy themselves by personal examination of the location of the proposed work, and by such other means as they may choose, as to the accuracy of the foregoing estimate, and shall not, at any time, after the submission of an estimate, dispute or complain of such statement, nor assert that there was any misunderstanding in regard to the depth of the excavation to be made or

the nature or amount of the work to be done." The right of the commissioner of public works to reject any or all bids which he might deem prejudicial to the public interests was expressly reserved. Thirteen bids were received in response to this advertisement, two thirds of which were what is known as unbalanced bids, that is, bids naming an exorbitant price for some classes of work and a greatly inadequate compensation for others. Brady's bid named eight dollars per yard for earth excavation; one-quarter of a cent per yard for rock excavation; one quarter of a cent per foot for curbing, and one quarter of a cent per foot for flagging.

Several bids for earth excavation largely exceeded Brady's and others, although below it, exceeded a fair price therefor. Fair prices for this work were forty cents per yard for earth excavation; one dollar and fifty cents per yard for rock excavation, seventy cents per foot for curb stone, and twenty-five cents per square foot for flagging.

Upon the engineer's estimates, Brady was the lowest bidder and the contract was thereupon awarded to him. The specifications attached to the contract provided that "boulders, blasted rock or broken stone will not be allowed for as rock, but must be included in the earth excavated, unless they are of a size to require blasting in order to be removed, which fact will be determined by the engineer. No soft or disintegrated rock that could be properly removed with a pick will be allowed for as rock."

The contract was executed in July, 1883, and the work commenced in August thereafter and continued for a period of about one year. In September, 1883, the surveyor certified that the contractor had excavated two thousand cubic yards of earth and that there was due him therefor $11,200, after deducting thirty per cent authorized to be retained by the contract.

The city voluntarily paid the contractor the sum appearing to be due upon this estimate. In October thereafter the surveyor made a further certificate for three thousand five hundred additional cubic yards of earth excavation and one thou-

sand yards of rock excavation, amounting in all to $28,000 which, deducting thirty per cent thereon, left $19,601.75 due the contractor. This sum was also voluntarily paid to him by the city. In March, 1884, a further certificate for two thousand additional cubic yards of earth excavation and eight hundred yards of rock excavation was made by the surveyor, netting $11,204.37 due to the contractor. The city refused to pay this amount and suit was brought therefor by the contractor in the Superior Court of New York, which was defended by the city. The answer therein expressly admitted the excavation by Brady of the two thousand yards of earth as claimed in the complaint, and also the correctness of the previous certificates for five thousand five hundred yards of similar excavation; but set up, by way of defense, that the contract was fraudulently obtained by the contractor.

A trial was had upon the issues thus joined, and judgment was rendered for the plaintiff February 9, 1885, for the amount claimed. This judgment was voluntarily paid by the city in March, 1885.

In May, 1884, the surveyor gave a further certificate stating that the amount of work done since the date of his third certificate was seven thousand one hundred and sixty-seven cubic yards of earth excavation and other items, making a gross amount of $57,386.91. The payment of this claim was refused by the city, and suit was brought thereon by the contractor's assignee, Bernard Brady, in the Superior Court of New York in June, 1885. An investigation of the claim was then made by the city and it concluded that it had no defense to the action. No answer or demurrer was interposed by the defendant, and judgment by default was taken by the plaintiff on August 21, 1885, for $37,670.84. This judgment was also voluntarily paid by the city. A final certificate was executed by the surveyor in September, 1885, stating that the total amount of work performed by the contractor was fourteen thousand six hundred and sixty-seven cubic yards of earth excavation at $117,336; ten thousand eight hundred and thirty-one cubic yards of rock excavation at $27.07; two thousand

five hundred and ninety-one and one-quarter feet curbing at $6.47; ten thousand four hundred and fifty-eight and seven-twelfths feet of flagging at $26.14, making a total cost of $117,395.68, and leaving a balance unpaid of $34,130.22. The city having refused to pay this balance, Bernard Brady, to whom the whole claim had been assigned, brought suit in April, 1886, therefor in the Superior Court of New York, claiming to recover, not only for the balance due upon said final certificate, but also for nine thousand seven hundred and eighty-three cubic feet of earth excavation in addition thereto. The city defended the action and set up the judgment of August, 1885, as a bar thereto; and, as a further defense, "that the work of rock excavation and earth excavation called for by the contract was performed by the assignor of the plaintiff in a wrongful and improper and fraudulent manner, so that certain material which should have been classified and measured as rock was, in fact, classified and allowed to the plaintiff, or his said assignor, as earth." This action is still pending undetermined. In August, 1886, the city moved, upon affidavits purporting to show frauds in the execution of the work by the contractor, in the Superior Court for an order setting aside the two judgments previously obtained by John and Bernard Brady, respectively, against the city upon the ground of fraud and newly-discovered evidence, and asked for leave to plead anew in said actions. This evidence was contained principally in the affidavits of two persons purporting to show that the contractor, during the progress of the work, fired blasts early in the morning in the absence of the inspector, and did other acts which, it was claimed, indicated an intention to prepare the material excavated for classification, as earth, instead of rock. Not only were the motives and character of these affiants assailed on the hearing of the motion, but the truth of the circumstances relating to them was disputed by answering affidavits upon the part of the plaintiffs in such judgments. In December, 1886, these motions were granted with some qualifications by the Special Term; but, upon appeal to the General Term, the Special Term

·order was reversed and the motions denied.   Upon an appeal
from such order to this court, the appeal was dismissed for
want of jurisdiction.  In January, 1888, this action was brought. .

The frauds, now alleged as the ground for setting aside the
judgments referred to, consist of repetitions of the allegations
used on the motion for a new trial, and others claiming that
the plaintiff was induced to enter into the contract in question
by the fraud of the contractor; that the original estimates
were erroneous, and the contractor knew it, and the plaintiff,
suspecting the fact, employed one Duffy to re-examine the
locality, with a view of obtaining further information as to
the correctness of such estimate ; that the contractor fraudu-
lently procured said Duffy to omit such re-examination and
report to the city officials that the original estimates were
correct, and that  the city officials were ignorant of such
fraudulent intervention of the contractor until shortly before
this suit was brought.

It is not claimed that the city has any additional proof of
the frauds stated, except in respect to Brady's alleged collusion
with Duffy.   The relief demanded is extraordinary and
abnormal in its character, and violates the general rules relating
to the determination of legal propositions.   The plaintiff seeks
to overthrow the rule by which the judgments of courts of
competent jurisdiction are considered final and conclusive
against collateral assaults, and to retry in another court issues
which have already been tried and determined.   It claims
the right to recover back moneys from a person to whom they
have been voluntarily paid in satisfaction of the obligations of
a contract, and to rescind its own voluntary admissions made
in legal proceedings, which have been used as the·basis of the
judgments of the court.   The conditions under which such
claims can be supported require at least the proof of extra-
ordinary circumstances, the absence of laches, and the establish-
ment of a case showing no reasonable doubt as to the
conclusiveness of the discovered proof, the justice of the claim,
and the merits of the controversy.

We do not think that the case made by the complaint is of

such a character. On the contrary, it is vague, inconclusive and contradictory, and fails to exhibit an actionable fraud, much less such as authorizes the cancellation of judgments and the retrial of issues once fairly tried and determined. While it is altogether probable that the expense of this work to the city has largely exceeded its real value, the complaint fails to show that this result was produced by fraud on the part of the contractor. In fact, a careful consideration of the facts exhibited by the complaint tends to disprove the existence of any fraud on his part. Indeed, the plaintiff's several allegations of fraud tend largely to nullify each other. The theory upon which its charges of fraud in the performance of the contract are based assumes the correctness of the estimates, and the charge of fraud in the estimates, tends to disprove fraud in the classification of the materials excavated. It alleges the knowledge of the bidders, as to the real character of the material to be excavated, but claims that this knowledge was unobtainable by its own servants. It alleges the honesty and good faith of its own agents, yet charges corruption upon the defendants for acts which its own servants performed, and were alone accountable for. It alleges a fraudulent suppression of information by the contractor, and refers to the contents of his bid communicated to plaintiff's agents when making the contract, for the proof of his knowledge. It alleges a fraudulent performance of the contract, but omits to show any method by which such a result could have been affected by the contractor. It charges him with a fraudulent classification of the materials excavated, while it sets up a contract by which its surveyor had the exclusive right to determine the classification, and, in fact, not only made the classification upon which the judgments were based, but still insists that they were correct.

The entire grievance of the plaintiff, when reduced to its simplest form of statement, consists of a complaint that its own surveyor has classified certain excavations as earth, which should have been described as rock, and the measure of the relief demanded is that the court make a classification, which the contract requires the surveyor to make. There is no com-

plaint but that Brady performed the obligations of his contract, according to its spirit and letter, and has been paid therefor the contract-price; but it is said that he has been paid for excavation as earth, which should have been rock.

By the contract the surveyor was to determine the nature of the excavation, and he has adjudged it to be earth and not rock; and in the absence of fraud or collusion, this determination is conclusive upon the parties.

Neither does the complaint establish any foundation for the claim that the contract was fraudulently obtained by Brady. It is obvious from a mere inspection of the bids submitted on the letting of the contract that the various bidders based their expectation of profits from the work, upon an erroneous classification by the city engineer of earth excavation. Eight of the bidders proceeded upon this assumption, and, therefore, bid exorbitant prices for that work and an inadequate price for other work. It is thus apparent that after full notice that a large majority of the bidders believed the true quantity of earth excavation to be much larger than that estimated by the city officers, the latter voluntarily made the contract by which they bound their principal to pay to the contractor more than twenty times the real value of such excavation. This was apparently done under an expectation that other work would be secured at such prices as would reimburse the city for any contemplated excess over its value, which the city would be called upon to pay for earth excavation. In view of the extreme latitude of the specifications in regard to earth excavation, it is manifest that this was an act of great improvidence on the part of the agents of the city, but we know of no principle upon which a contract entered into under such circumstances can be avoided upon the ground that one of the parties erred in judgment in respect to the advantages to be derived therefrom.

While the complaint alleges, with persistent iteration, that the city was ignorant of the real nature of the material to be excavated and had no means of discovery, it, nevertheless,

claims that Brady was cognizant of the fact, without disclosing any means whereby he could become so, which were not equally open to all other inquirers. Even if Brady had acquired knowledge of the real character of the material to be excavated, he had simply pursued the instructions given to him by the plaintiff, and occupied no relation to the city which made it his duty to disclose his knowledge to it.

In view of the broad requirements contained in the specifications, the exorbitant price agreed to be paid for earth excavation and the uncertainty attending any preliminary estimate, it would seem quite unnecessary to resort to imputations of fraud against the contractor to account for the disparity between the original estimate and the results shown by the performance of the contract. The unfortunate condition of the city seems altogether attributable to a defective system of letting contracts, and a careless and lax administration of their authority, under such system, by the municipal agents. This clearly appears from the evidence given on a former trial by the plaintiff's surveyor Viele. In answer to a question by the plaintiff as to what the differences consisted of, which revealed so great an amount of earth to be excavated, he said: " The rock that stuck out lay in ridges, and between them were pockets, and in the pockets of earth there were quantities of boulders of different sizes; then a great deal of the rock that stuck out was soft and they could pick it to pieces with a pick, that rock which is soft goes as earth under the contract." There is no pretense that Brady made or could make any preliminary investigation of the character of the materials to be excavated, except such as was open to other persons, and the excuses now made by the plaintiff's agents for making the contract are wholly inadequate to relieve them from the imputation of improvidence and carelessness in entering into it. They were at liberty to reject this as well as all other bids; but with ample notice of the expectations of the contractor, they voluntarily and understandingly executed the contract and deliberately subjected the city to liability for its performance. The city knowingly took the chances of what was obviously a

speculative contract, and it has no right now, after experience has shown its error, to be relieved from its obligations.   There can be no question but that the contract was let in conformity with the requirements of law and was awarded to the lowest bidder according to the mode provided for determining that question.

As was said by Judge FINCH, in *Reilly* v. *Mayor, etc.* (111 N. Y. 478), a similar case : " The charge of fraud rests only on the fact that the contractor had a more accurate knowledge of quantities than the surveyor, and in ' bad faith ' made his bid. Calling names does not alter facts.   The contractor had a right to the benefit of his own knowledge, honestly acquired, so long as he did nothing to mislead or deceive the city, and there was no bad faith either in the acquisition of his knowledge or the use of it in guiding his bid.   On the contrary, the terms of the contract warned him that the estimates might not be correct, and left him to judge in that respect and in his own peril in making his bid.   *   *   *   Under the law the bids are to be made and the contracts awarded upon estimates of the work to be done, and he who is the lowest bidder upon those estimates is the lowest bidder under the law, and does not lose his right because the estimates are erroneous."

Whatever might have been the improvidence of the city in making the contract, it is manifest that its evil effects could have been greatly mitigated, if not altogether cured, by the exercise of reasonable care and prudence in supervising the work done under it.   It is obviously impossible that the work of drilling, boring, blasting and disposing of rock, prosecuted by a large number of men, in a populous city, could be carried on to any large extent in silence and secrecy, and without the knowledge of the city's inspectors, even though they might be, from time to time, temporarily absent from the place of operation.   The work to be performed was of such a character as would necessarily leave evidence of its manner of performance upon the material excavated and unexcavated, which could not be concealed from the observation of the most casual

observer. The city not only had inspectors constantly on the street to observe and supervise its excavation and to keep a daily record thereof, but no material could be classified as earth except such as should be so determined and certified to by its own officers. Under these circumstances, it would seem to be difficult, if not impossible, for the contractor to perpetrate frauds in the classification of the materials excavated, except by means of collusion with the agents of the city. The complaint does not allege any such collusion.

We think the case made by the complaint fails to show that the charges of fraud, in the performance of the work, are well founded. However, this may be, we do not think the plaintiff has brought the case within the established rules authorizing a court of equity to vacate and set aside judgments duly recovered in an action at law.

The charges of fraud, as stated in the complaint, consist of two classes only, viz., those relating to the inception of the contract, and those involved in the performance of the work done under it.

It is not claimed but that these alleged frauds had been perpetrated, and, so far as they might constitute a defense to the city, existed and were available to the plaintiff when the first action between Brady and the city was tried. The gravamen of the charge is that the city was then ignorant of evidence, which it subsequently discovered, that might have proved the existence of a defense. No sufficient reason is alleged why the city did not discover and prove the facts relating to the alleged fraudulent performance of the work in that action, and it is obvious that the exercise of very ordinary care and diligence on its-part, after notice that the earth excavation largely exceeded the estimate, would not only have prevented the possibility of any fraud in that respect, but would, at the same time, have furnished the proof of its existence, if any had been attempted. In fact, the testimony of the surveyor in charge and his assistants now shows that the amounts of earth excavation stated in the final certificate was, in fact, performed by the contractor; and against such evidence and

the deliberate admissions made by the city on the former trials that the work had been performed by Brady, the circumstantial proof now alleged to have been discovered, is too weak and inconclusive to change the result formerly arrived at. The adjudication made on the motion for a new trial is also conclusive between the parties as to the force and effect of the alleged newly-discovered evidence, of improper performance. If that evidence was deemed insufficient in the regular course of judicial proceedings to entitle the plaintiffs to relief, it necessarily follows that it would be inadequate to support an action in another court to obtain relief which might have been obtained in the court of original jurisdiction.

The claim with regard to collusion affecting the inception of the contract is, that after the engineer had made his certificate the city officers doubted its correctness and employed one Duffy to make further examination of the locality. Duffy was a subordinate of the city surveyor, and it is not claimed that he had any other means of discovering the true character of the material to be excavated than the surveyor had, and, indeed, the complaint substantially alleges that it was impossible to discover the real character of such material in advance of the performance of the contract. It is not even alleged in the complaint that the city now has any evidence of the fact of fraudulent collusion between Brady and Duffy, or, if they have, that such fact can now be proved. It simply alleges that, by an examination of Duffy or otherwise, such collusion might have been discovered; but it is nowhere alleged that it can be proved by him, or any other person having knowledge of the fact, or that, in the absence of such collusion, Duffy could have discovered and made known any fact that was not discovered and known to the surveyor when he made his original estimate. Neither does it follow that the city would not have followed the estimate of their surveyor, and made the contract whatever might have been the report made by Duffy, for they had abundant notice in the bids of the proposed contractors that skilled and competent men who had investigated the facts, believed the surveyor's estimate to be inaccurate.

It is not perceived how proof of the facts stated in respect to collusion could produce any different result on a new trial. Such collusion, resulting in no injury to the city, cannot be a cause for setting aside a judgment regularly obtained. Conceding, however, the plaintiff's claim as to the force and effect of the facts discovered by it, we are of the opinion that they are none the less insufficient to authorize any interference with the judgments assailed. Those facts are to the effect that Brady fraudulently induced the plaintiff to enter into a contract which, through fraud and otherwise, has operated to the injury of the plaintiff. We are not aware of any rule which authorizes one court of co-ordinate jurisdiction to vacate and set aside the judgments of another court upon the ground that the contracts upon which they were based were fraudulently obtained, or that there had not been an honest and fair performance thereof. These were the precise issues which the defendant in those actions was called upon to meet and try therein, and there is no claim that it was obstructed or prevented from presenting its defense, if it had any, by any act or contrivance on the part of the respective plaintiffs therein. We are of the opinion that, by settled rules, the case made by the complaint is altogether insufficient to authorize the court to' set aside the judgments and retry the matters involved in such actions. It was said by Judge ANDREWS, in *Smith* v. *Nelson* (62 N. Y. 288), that the " jurisdiction of one court to vacate, in an independent proceeding, the judgment of another having power to render it, is, in its nature, so extraordinary as to demand a close adherence to principles and precedents in exercising it. Courts do not exercise it when there has been negligence on the part of the party seeking the relief. That a judgment is final and conclusive of the right or thing which is adjudicated by it, is the rule, and judgments and decrees of a competent court will not be annulled for a suspicion of fraud, or because the party complaining may, in fact, have been unjustly cast in judgment."

The character of the fraud which will authorize one court, in a collateral proceeding, to revise the judgments of another

· has been frequently held to be a fraud practiced in the procurement or concoction of the judgment itself, by which the defendant was prevented from availing himself of his defense.    This rule is now too well settled to admit of dispute. Story, in his Equity Jurisprudence (§ 1575), states it as follows : " It seems to be conclusively settled that a judgment can only be impeached in a court of equity for fraud in its concoction.    If, then, the judgment of a court of competent jurisdiction can only be enjoined in a court of equity upon the ground of fraud, this fraud must have been practiced in the very act of obtaining the judgment, or else it will be concluded by the judgment at law where there is equally a defense as in equity."

Pomeroy's Equity Jurisprudence (§ 1361) says that : " Equity will not restrain a legal action or judgment when the controversy would be decided by the court of equity upon a ground equally available at law, unless the party invoking the aid of equity can show some special equitable feature or ground of relief, and, in the case assumed, this special feature or ground must necessarily be something connected with the mode of trying and deciding the legal action, and not with the cause of action or the defense themselves."

In *United States* v. *Throckmorton* (98 U. S. 68), it was held that " the acts for which a court of equity will, on account of fraud, set aside or annul a judgment or decree between the same parties, rendered by a court of competent jurisdiction, have relation to frauds, extrinsic or collateral to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered."    It was there said that the doctrine was well settled that the court would not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed.    Ignorance of the facts constituting the defense does not excuse the omission of the party to make it, nor entitle him to the aid of equity, unless it can be shown that he could not have acquired

the information by diligent and careful labor in preparing the cause for trial.

The rule is inflexible that a party seeking the aid of a court of equity must show diligence, and that the obstacles which prevented him from maintaining his legal rights could not have been overcome or avoided by any reasonable care or diligence on his part.   (Pom. Eq. 401.)

It was said by Judge ANDREWS, in *Stilwell* v. *Carpenter* (59 N. Y. 423), that " the general rule, that the decision and judgment of a court, as to any matter within its jurisdiction, is conclusive upon the parties, and those in privity with them, is fundamental.   It secures respect for judicial decisions and terminates litigation.   It gives stability to rights of persons and property once established in courts of justice, and a wise policy demands that in cases falling within the reason of the rule it shall be adhered to."   The judge then refers, with approval, to the rule governing courts of equity in exercising jurisdiction over the judgments of courts of law, as stated by Chief Justice MARSHALL in *Marine Insurance Company* v. *Hodgson* (7 Cranch, 332), "that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to the court of chancery."   The judge then proceeds, and says: " It is not sufficient to authorize the interference of the court that it is shown that the claim upon which the judgment was obtained was unfounded, or that there was a good defense to the action, or that the court erroneously decided the law, or that the defendant omitted to avail himself of his defense, if before the judgment the facts were known, or might, by the exercise of reasonable diligence, have been ascertained by him.   It is the duty of a defendant to make his defense, if he has any, when he is sued, and if he omits to do it, he is in general concluded by the judgment."

In *Hendrickson* v. *Hinkly* (17 How. [U. S.] 443), Judge CURTIS states the rule as follows: "A court of equity does not interfere with judgments at law, unless the complainant has an equitable defense of which he could not avail himself at law, because it did not amount to a legal defense, or had a good defense at law, which he was prevented from availing himself of by fraud or accident unmixed with negligence of himself or his agents."

Judge FOLGER, in *Stilwell* v. *Carpenter* (2 Abb. N. C. 263), upon a reargument of that case, said: "A court of equity may set aside the judgment or decree of another court when it has been obtained by the fraud of the party. The question of fraud, which is open to examination in such case, is as to something which intervened in the proceedings by which the judgment was obtained, and it must have occurred in the very concoction or procuring of the judgment, and not have been known to the opposite party at the time, and for not knowing which he is not chargeable with neglect or inattention. The fraud must consist in something of which the complaining party could not have availed himself in the court giving the judgment, or of which he was prevented from availing himself then by fraud."

Illustrations of the character of the fraud, for which courts of equity will grant relief, are found in the authorities cited in Pomeroy's Equity Jurisprudence, at page 400. As, for instance, when the defendant is prevented from defending, by false and fraudulent promises or representations, that the proceedings against him will not be prosecuted further, or when his witnesses have been fraudulently tampered with or removed, or he is absent from sickness, accident or other justifiable reason, or where he has not been properly summoned or notified.

In *Ross* v. *Wood* (70 N. Y. 10), it was held that "the fraud which will justify equitable interference, in setting aside judgments and decrees, must be actual and positive and not merely constructive. It must be that which occurs in the very concoction or procuring of the judgment or decree, and something

not known. to the opposite party at the time, and for not knowing which he is not chargeable with negligence."

Tested by these rules, the plaintiff must be considered negligent in not discovering and availing itself of its defense, upon the trial of the actions, resulting in the judgments referred to, and it must also be held that the alleged frauds were not of such a character as authorized the interference of the court with the judgments rendered. It follows that the relief demanded, so far as the judgments already recovered are concerned, must be denied. These judgments standing, there is no relief asked for by the complaint to which the plaintiff is entitled, that is not now available to it, in the action still pending against the city.

The judgment should, therefore, be affirmed.

All concur.

Judgment affirmed.