CASSIA A. JONES, Appellant, *v.* RICHARD E. JONES, Respondent.

*Power of the court to vacate a judgment obtained by fraud — divorce — annulment of a marriage, on the ground that a prior marriage between the plaintiff and a third party was in force, by way of affirmative relief to the defendant — laches.*

The power of the Supreme Court to annul or set aside a judgment for fraudulent practices in obtaining it is undoubted.

The fraud or accident which will authorize interference with judgments must be unmixed with negligence on the part of the moving party.

The proof must be clear and satisfactory to induce the court to interfere with a regular judgment alleged to have been fraudulently obtained; it is not sufficient merely to raise a suspicion or to show constructive fraud, but there must be proof of actual fraud.

In an action for divorce on the ground of adultery, brought by a wife against her husband in the Supreme Court, judgment was regularly entered on the confirmation of the report of a referee, to whom the case had been referred to hear and determine, dismissing the complaint and giving the defendant the affirmative relief demanded in his answer, by declaring the marriage contract between the parties to be null and void, for the reason that the plaintiff had a lawful husband living at the time of such marriage. Fourteen months after notice of this judgment, the plaintiff moved at Special Term to set aside the

judgment on papers alleging collusion and fraud on the part of her attorney in conducting the case. The motion was denied.

*Held*, that the Special Term was justified, under the rules above stated, in finding that no fraud was practiced upon the plaintiff by her attorney or any other person connected with the trial before the referee, or on the motion to confirm the report, or in procuring the judgment ;

That the Special Term had no power, in hearing the motion for a vacation of the judgment, to reverse or add to or subtract from the decision of the referee; to obtain such a result, the remedy was by appeal where the decision of the referee could be reviewed.

*Semble*, that the parties were bound by the judgment entered and not appealed from, since the referee and the court confirming his report had jurisdiction of the person and of the subject-matter, and the answer interposed by the defendant contained allegations sufficient to bring the subject-matter within the provisions of section 1743 of the Code of Civil Procedure, which authorizes an action to be maintained to procure a judgment declaring a marriage contract void and annulling the marriage, on the ground that the former husband or wife of one of the parties was living at the time of such marriage, and that the marriage with the former husband or wife was then in force.

*Held, also*, that the plaintiff was chargeable with *laches* and neglect in not moving to set aside the judgment until fourteen months after notice thereof, and that the Special Term was warranted in taking into consideration such *laches* and neglect in disposing of her motion.

APPEAL by the plaintiff, Cassia A. Jones, from an order of the Onondaga Special Term, made on the 5th day of April, 1890, and entered in the office of the clerk of Madison county on the 9th day of April, 1890, denying a motion made by the plaintiff "to open, vacate and set aside the judgment in this action, entered in the clerk's office of the county of Madison on the 11th day of May, 1888."

Plaintiff, in her complaint, alleged that on the 3d day of September, 1865, at Hastings, Barry county, Michigan, she was married to the defendant, and that they lived as man and wife until some two years previous to the commencement of this action ; and in her complaint stated numerous alleged acts of adultery committed by the defendant, without her consent, connivance or privity. An answer was served by the defendant on the 28th of September, 1887, which denied all the allegations of the complaint except that " the defendant admits that on the 3d day of September, 1865, at Hastings, Barry county, Michigan, the plaintiff was in form married to the defendant; said marriage, the defendant avers, on information and belief, was illegal and void, as set forth in the second answer herein ;" and he also admitted

that he was a member of the firm, as stated in the complaint; and he also admitted "that the issue of said alleged marriage of the plaintiff and defendant was one child named Minnie A., now about twenty years of age;" and then the answer proceeded to set up an independent defense, viz.: "For a separate and further answer to said plaintiff's complaint, under which this defendant asks for affirmative relief, the defendant avers, on information and belief, that on or about the 11th day of January, 1862, at the county of Barry and State of Michigan, the plaintiff herein was lawfully married to one John C. Birdzell, and lived and cohabited with him as his wife; that at the time of the alleged marriage of the plaintiff with the defendant, to wit, the 3d day of September, 1865, the said John C. Birdzell was alive, and deponent is informed and believes, and, therefore, charges the fact to be, she, the plaintiff herein, was the lawful wife of said John C. Birdzell, all of which was unknown to the defendant at the time of his said marriage to the plaintiff. Wherefore, the defendant demands judgment that the plaintiff's complaint in this action be dismissed with costs, and that a decree be granted herein by this court declaring the marriage of the defendant with the plaintiff on the 3d day of September, 1865, as alleged in the plaintiff's complaint, null and void." October 5, 1887, the plaintiff served a reply, denying all the allegations of "the second count of defendant's answer." On the 22d of October, 1887, at a Special Term held in Onondaga county, "on reading and filing the pleadings in this action, also the stipulation of the attorneys herein, and consent of the parties in open court, (it was) ordered that the issues joined in this action be referred to Delmer T. Willis, Esq., of Canastota, an attorney of this court, to try and determine."

The first hearing before the referee was on the 2d of November, 1887, and on that day the plaintiff in person and the defendant in person, with their respective attorneys, appeared before the referee, and the plaintiff asked for an adjournment, which was had, to the 15th of December, 1887, on which day they appeared and a further adjournment was had to January 3, 1888, on which occasion the parties in person and with their counsel appeared before the referee, and the attorney for the plaintiff stated "that he has carefully examined and investigated the case, and can find no evidence to

establish the fact of the adultery of the defendant, and that he has no evidence to offer on that question." Thereupon the plaintiff rested and the defendant was sworn as a witness and denied the acts of adultery alleged in the plaintiff's complaint, and also testified, viz.: "At the time of the marriage ceremony between the plaintiff and myself I did not know that the plaintiff had another husband living." The defendant also put in evidence testimony taken on commission in the State of Michigan.

On the 10th of October, 1887, an order for an open commission was filed in the clerk's office in Madison county, naming Clement Smith as commissioner, and on the eleventh of October, when the parties appeared in the city of Hastings they ascertained that the commissioner was out of town, and they entered into a stipulation naming another commissioner before whom the evidence was taken, and in pursuance thereof it was returned and filed in the Madison county clerk's office October 17, 1887.

At the close of the evidence the case was submitted to the referee, who, on the 20th of February, 1888, made his report wherein he found as matter of fact: 1. "That at the time of the commencement of this action the plaintiff and defendant were, and now are, residents of Madison county." 2. "That on the 3d day of September, 1865, at Hastings, Barry county, and State of Michigan, the plaintiff was in form married to the defendant." 3. "That the issue of said marriage was one child, a daughter named Minnie A. Jones, now about twenty years old." 4. "That on or about the 11th day of January, 1862, at the county of Barry, and State of Michigan, the plaintiff herein was lawfully married to one John C. Birdzell, by Charles H. Stone, Esq., a justice of the peace of said county, and that said John C. Birdzell was living on the 3d day of September, 1865, the time when the parties to this action were married, and was then the lawful husband of the plaintiff herein, which facts were unknown to the defendant herein until on or about the time of the commencement of this action, and that the marriage of the defendant to the plaintiff was contracted on the part of the defendant in good faith." 5. "That the defendant is not guilty of any of the acts of adultery charged in the complaint."

As matters of law the referee reported: 1. "That the plaintiff is not entitled to the relief demanded in the complaint." 2. "That

the marriage of the plaintiff and defendant was absolutely null and void, the plaintiff having a lawful husband living at the time of such marriage." 3. " That the issue of said marriage of the plaintiff with the defendant, Minnie A. Jones, is the legitimate child of the defendant herein and that the defendant is entitled to the care, custody and control of said child." 4. " That the defendant herein is entitled to a decree in this action dismissing the plaintiff's complaint, with costs, and to the affirmative relief demanded in his answer declaring said marriage contract between the plaintiff and defendant null and void." The referee's report and the evidence taken by him, in pursuance of a notice bearing date the 10th of April, 1888, were presented at a Special Term held on the 28th of April, 1888, in Onondaga county, and a judgment was ordered in accordance with the referee's report, the order for the judgment being signed by Kennedy, J., who presided at the said Special Term. The pleadings and the order with the said proposed judgment were filed May eleventh in the clerk's office of Madison county, and the judgment, in accordance with the referee's report, and of the order so made at Special Term, was entered, and notice of the judgment was, within a few days, given to the plaintiff's attorney.

Upon an affidavit, verified by the plaintiff on the 10th day of July, 1889, with other affidavits and papers, a motion was made to set aside the judgment, and upon numerous affidavits and papers in opposition thereto enumerated in the order made, and after consideration by the court of the papers for and against the motion, an order denying the motion was made, which is brought up for review.

*C. A. Hitchcock*, for the appellant.

*George W. Ray*, for the respondent.

Hardin, P. J.:

So far as the moving papers contain allegations of collusion, fraud or corruption on the part of the attorney of the plaintiff in conducting the proceedings, they are fully met by contradictions, explanations and affirmative statements found in the opposing affidavits and papers. The power of this court to annul a judgment, or set aside one for fraudulent practices in obtaining the same, is undoubted. (*Smith* v. *Nelson*, 62 N. Y. 288.)

In *Ross* v. *Wood* (70 N. Y. 8), it was held : That the fraud or accident which will authorize interference with judgments must be unmixed with negligence on the part of the moving party. And in *Mayor* v. *Brady* (115 N. Y. 616), it is said that it is incumbent upon a moving party to show that he was deprived of his rights " by fraud or accident unmixed with negligence of himself or his agents." And in *Ward* v. *The Town of Southfield* (102 N. Y. 293), it was said that the proof must be clear and satisfactory to induce the court to interfere with the judgment alleged to have been fraudulently obtained, and also that " The solemn judgment of the court should not be lightly interfered with. It is for the interest of the public, as well as of individuals, that there should be an end of litigation, and where parties have been lawfully brought into a court having jurisdiction of their persons and the subject of litigation, and have had an opportunity to prosecute their claims and to defend their rights, and judgment has been regularly pronounced, while such judgment is not vacated or reversed it concludes the parties thereto ; " and also that " Before a regular judgment can be thus assailed the proof should be clear and very satisfactory. It is not sufficient merely to raise a suspicion or to show what is sometimes called constructive fraud, but there must be actual fraud." Applying the rules stated in the cases to which reference has been made to the proofs presented at the Special Term, we are of the opinion that it was justified in finding that no fraud was practiced upon the plaintiff by her attorney, or any other person connected with the trial before the referee, or on the motion to confirm the report, or in procuring the judgment which was entered dismissing her complaint, and awarding the affirmative relief given to her by the findings of the referee, and sanctioned by the order of confirmation. We think we ought not to overturn the findings of the Special Term upon the proofs and papers found in the appeal book before us.

(2) The Special Term had no power, in hearing the motion now before us, to reverse, or add to or subtract from the decision made by the referee. (*McLean* v. *Stewart*, 14 Hun, 472 ; approved in *Rockwell* v. *Carpenter*, 25 id. 532.) To obtain such a result the party's remedy was by appeal, where the decision of the referee could be reviewed.

(3) Doubtless the referee and the counsel engaged in the trial

before him were influenced by the decision and opinion in *Finn* v.
*Finn* (62 How. 83), in which case it was held " that a marriage con-
tract entered into by a person having a husband or wife living, with
a third person, is utterly void ;" and, also, that the evidence of the
former marriage was competent in the case, and it being established,
is a defense to the action ; and " that under section 501 of the Code
of Civil Procedure, in an action for divorce *a vinculo*, a defendant
may have affirmative relief." It is not needful for the purposes of
the decision of the appeal now before us to determine whether such
relief could have been obtained had objection been taken thereto
upon the trial before the referee ; nor to determine that in case he
had overruled such objections, and an appeal had been taken from his
decision, that his rulings would have been sustained in that regard ;
nor is it needful to determine whether section 1770 of the Code of
Civil Procedure is restrictive and prohibitive as to the " cause of
action against the plaintiff and in favor of the defendant " which may
be set up in an action for divorce. (*Mackeller* v. *Rogers*, 109 N.
Y. 472.) Section 1743 of the Code expressly authorizes an action
to be maintained to procure a judgment declaring a marriage con-
tract void and annulling the marriage on the ground " that the former
husband or wife of one of the parties was living, and that the mar-
riage with the former husband or wife was then in force." That
section confers upon the court power to annul a marriage for the
cause stated. In the case before us the referee, and the court con-
firming his report, had jurisdiction of the person and the subject-
matter of the action ; and the answer interposed by the defendant
contained allegations sufficient to bring the subject-matter within
the provisions of section 1743 of the Code.

In *Hunt* v. *Hunt* (72 N. Y. 228), it is said : " Power given by
law to a court, to adjudge divorces from the ties of matrimony, does
give jurisdiction of the subject-matter of divorce. Though the pro-
ceedings before that court from first to last of the testimony, in an
application for divorce, should show that a state of facts does not
exist which makes a legal cause for divorce, yet it cannot be said
that the court has not jurisdiction of the subject-matter, that it has
not power to entertain the proceeding, to hear the proofs and alle-
gations, and to determine upon their sufficiency and legal effect."
(*Prior* v. *Prior*, 15 N. Y. Civ. Proc. Rep. 436 ; *Cromwell* v. *Hull*,

97 N. Y. 209; *Reed* v. *Reed*, 107 id. 548.) In the last case it was said: " The court in the present instance had jurisdiction of the parties and of the subject-matter of the action, and from the decision made no appeal was taken. All the parties, therefore, are bound." (*Rima* v. *R. I. Works*, 120 N. Y. 438; *Blanc* v. *Blanc*, 51 N. Y. St. Repr. 822.)

(4) When the referee's report and the order approving the same and directing judgment in accordance therewith (inasmuch as the reference was to hear and determine) were filed with the.clerk of Madison county, he was authorized to enter a judgment without the same being signed by the judge who had directed the same. (Code Civ. Proc. § 1204.) Plaintiff having had notice of the judgment fourteen months before the notice of motion, is chargeable with *laches* and neglect, and the Special Term was warranted in taking into consideration such *laches* and neglect in disposing of the motion made by her to set aside the judgment. (*Mattern* v. *Sage*, 3 N. Y. Supp. 120.) The foregoing views lead to an approval of the decision of the learned judge at the Special Term.

MERWIN and PARKER, JJ., concurred.

Order affirmed, with ten dollars costs and disbursements.