LIANA R. O'NEIL, Appellant, v. McKINLEY MUSIC COMPANY, Respondent.

First Department, October 30, 1925.

Contracts — action to recover balance due under contract between plaintiff's assignor and defendant — said assignor was to be paid fifty per cent of amount defendant received on rentals and sales of phonographs — plaintiff succeeded in prior action to recover commissions under same contract — defendant's counterclaim alleging fraudulent overpayment barred for laches — plaintiff entitled to summary judgment under Rules of Civil Practice, rule 113 — defendant not prejudiced by reason of determination upon affidavits of plaintiff's motion for summary judgment.

In an action by an assignee to recover the balance claimed to be due under a written contract between the defendant and plaintiff's assignor, whereby said assignor was to be paid, in addition to a salary, fifty per cent of all moneys received by said defendant from the rentals and sales of its phonographs, after deducting salesmen's commissions, defendant is barred from interposing a counterclaim predicated upon an alleged fraudulent overpayment of commissions to salesmen, since said overpayments, if made, were made prior to the beginning of an action by plaintiff's assignor to recover moneys then due as commissions, in which said assignor was successful, and said assignor when he left defendant's employ before the commencement of said prior action, left in defendant's possession all the books of account from which it could have discovered all the details of the salesmen's accounts and what fraud, if any, was committed in the payments to them. Moreover, since defendant could have ascertained whether or not an overpayment had been made before the commencement of the prior action, it is guilty of laches and its counterclaim herein is insufficient, and, therefore, plaintiff is entitled to summary judgment.

The defendant is not prejudiced by reason of a determination upon affidavits of plaintiff's motion for summary judgment under rule 113 of the Rules of

Civil Practice, since, had it been diligent, and moved for a new trial of the prior action upon the ground of newly-discovered evidence, that motion also would have been determined upon affidavits.

APPEAL by the plaintiff, Liana R. O'Neil, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county 'of New York on the 25th day of February, 1925, denying plaintiff's motion made under rule 113 of the Rules of Civil Practice for summary judgment.

*Samuel J. Rawak,* for the appellant.

*McDonnell & Lebett [George J. McDonnell* of counsel], for the respondent.

DOWLING, J.:

This action was brought upon an assigned claim to recover the sum of $2,151.60, a balance claimed to be due plaintiff under a written contract made on the 23d day of February, 1916, between the defendant and Raymond L. O'Neil, plaintiff's assignor, whereby in consideration of plaintiff's assignor putting into operation a plan for the leasing and selling of defendant's phonographs, defendant agreed to pay him, in addition to his salary of $6,000 a year, fifty per cent of all moneys received by it from the rentals and sales, after deducting salesmen's commission.

This contract has been the subject of previous litigation between these parties. That action was begun September 27, 1917, to recover moneys collected by defendant prior to its institution. A trial resulted in a judgment in plaintiff's favor, which was affirmed by this court (195 App. Div. 890). That judgment was paid and satisfied by defendant.

The complaint herein alleges that between the 27th day of September, 1917, and the commencement of this action, October 3, 1922, defendant received from the sales of phonographs $5,379, from which there was paid to salesmen for commissions the sum of $1,075.80, leaving a balance of $4,303.20, of which sum under the terms of said contract plaintiff's assignor was entitled to receive the sum of $2,151.60, which claim he assigned to the plaintiff before the commencement of the action.

In addition to denying the material allegations of the complaint, the defendant's answer sets up a counterclaim and setoff, wherein it is alleged that the said Raymond L. O'Neil, plaintiff's assignor, had complete control and full authority to employ, pay and discharge the salesmen employed by him to sell defendant's merchandise; that the said O'Neil represented to defendant that certain agents and salesmen employed by him had sold merchandise largely

in excess of the amount they had sold, and thereby induced defendant to advance to him large sums of money to pay said salesmen; that the salesmen never sold the amount of goods or earned the amount of money that said O'Neil induced the defendant to advance to him for the purpose of paying said salesmen, and that said O'Neil knew at the time that said salesmen were being overpaid and concealed such fact from the defendant; that the overpayments made to said salesmen upon the representation of O'Neil that they had or would earn the amounts advanced, amounted to the sum of $3,088.36 over and above what the salesmen actually did earn, and that the transaction arose out of and in the course of dealings upon which plaintiff's cause of action herein arose, and as a part of the same transaction.

The bill of particulars served by defendant shows that all of said alleged overpayments were made prior to the commencement of said action and long before the trial thereon.

The plaintiff's reply to this counterclaim consists of a general denial; and as a defense plaintiff alleges that upon the trial of a former action between the same parties arising out of the same contract for his share of the moneys received by defendant for merchandise sold between February 23, 1916, and September 27, 1917, it was stipulated by the attorneys for the parties that the salesmen's commissions, amounting to the sum of $4,064.70, be deducted from the gross amount received by defendant, and as plaintiff obtained a judgment in that action for his share of the proceeds after deducting these commissions, defendant is now barred from alleging its counterclaim in this action.

I can see no merit in defendant's contentions herein. The right of plaintiff's assignor to commissions was established in the former action. The amount for which this action is brought is admitted by defendant's failure to deny the paragraphs of the complaint in which the sums collected by it under the contract are averred. As to the counterclaim, the president of defendant makes this affidavit: " Deponent further says that the reason that defendant did not interpose its counterclaim on the trial of the former action is that at that time its officers had no knowledge of the said overpayments until after the trial of that action; that prior to the trial of that action, the said O'Neil had charge of the salesmen, and had the books and records in his possession showing the names of the salesmen, and the amount of overpayment. That the commission book used by him in defendant's New York office never came into defendant's possession until after the trial of the former action, and that there was no way that defendant could discover this overpayment until after they obtained possession of said books."

It is shown in the answering affidavit of plaintiff's assignor, Raymond L. O'Neil, that he left defendant's employ September 1, 1917, " and when he left the defendant's employ he left in the New York office of the defendant all of the books, records and papers which belonged to the defendant corporation, which included the records of sales, commissions earned and due to salesmen and the records of payments made to salesmen, all of which were duplicates of similar records kept by the defendant in its Chicago office." This is not denied by defendant.

It further appears that the former action was commenced September 27, 1917; the first trial thereof was had in January, 1919 (189 App. Div. 255), and the second trial in April, 1920. The defendant's affidavit fails to set out after which trial it claims the information first came into its possession. It is also significant that no motion for a new trial on the ground of newly-discovered evidence was ever made by defendant. I think the language of Mr. Justice CLARKE, now presiding justice, in *Standard Fashion Co.* v. *Thompson* (137 App. Div. 588) is applicable to this case: " ' So far as this motion for a new trial is based upon the theory of newly-discovered evidence, an insuperable objection to it is found in the fact that the evidence now brought forward could and would have been found before the trial if proper care had been taken. It is claimed that the defendant was not able to learn by inquiry that the plaintiff had suffered serious injury, and that for this reason less preparation was made for defending the action. There seems to have been no good reason why the defendant should have supposed the injuries were slight. The complaint stated their serious and permanent character in plain terms, and the damages demanded were $10,000. An application for a bill of particulars and an examination of the plaintiff before trial would have afforded the defendant most of the material evidence it now relies upon, and would have afforded a clue to the rest, had pains been taken to follow up such a clue.'

" In all the authorities considering the question of when an equitable action will lie to prevent the enforcement of a judgment at law, it is stated as a fundamental proposition that the plaintiff must not have been guilty of any laches, neglect or delay. It appears in this case that while the plaintiff has been exceedingly industrious since the judgment was entered against it, it was guilty of such neglect during the years the action at law was pending as constitutes a fatal obstacle to this equitable action. Extraordinary activity after the event is no substitute for ordinary care prior thereto."

So in the case at bar, with the books of account showing the payments to salesmen in its possession from September 1, 1917, both in its New York and Chicago offices in duplicate, defendant

should have examined them and discovered what they showed before it stipulated upon the trial the amount of the salesmen's commissions; and the latest date at which it could have acted was on a motion for a new trial of the first action if it ever discovered it had been deceived. Its laches was inexcusable.

In *Mayor* v. *Brady* (115 N. Y. 599) the city brought an action in equity asking that several judgments recovered by some of the defendants be set aside, the claim being that the defendant Brady had committed fraud in obtaining the contract on which he had previously procured judgments and also in the performance of the contract. The fraud related wholly to the cause of action tried and not to the means employed in obtaining the judgments sought to be set aside. The Court of Appeals said: " It is not claimed but that these alleged frauds had been perpetrated, and, so far as they might constitute a defense to the city, existed and were available to the plaintiff when the first action between Brady and the city was tried. The gravamen of the charge is that the city was then ignorant of evidence, which it subsequently discovered, that might have proved the existence of a defense. No sufficient reason is alleged why the city did not discover and prove the facts relating to the alleged fraudulent performance of the work in that action, and it is obvious that the exercise of very ordinary care and diligence on its part, after notice that the earth excavation largely exceeded the estimate, would not only have prevented the possibility of any fraud in that respect, but would, at the same time, have furnished the proof of its existence, if any had been attempted. * * * It was there said [ *United States* v. *Throckmorton*, 98 U. S. 68] that the doctrine was well settled that the court would not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed. Ignorance of the facts constituting the defense does not excuse the omission of the party to make it, nor entitle him to the aid of equity, unless it can be shown that he could not have acquired the information by diligent and careful labor in preparing the cause for trial.

" The rule is inflexible that a party seeking the aid of a court of equity must show diligence, and that the obstacles which prevented him from maintaining his legal rights could not have been overcome or avoided by any reasonable care or diligence on his part."

It appears that the books of plaintiff's assignor were frequently examined by defendant's auditor. In view of this fact, and of the further fact that such books were in defendant's custody and control in duplicate in the New York and Chicago offices, I believe defendant had full opportunity to ascertain all the details of the

salesmen's accounts and what fraud, if any, was committed in the payments to them, having full access to all the documents and to the witnesses as well, since September 1, 1917. It was more than two years before the second trial took place. In view of these circumstances I think the defendant is bound by the adjudication in the former action, that the counterclaim herein is insufficient, and that plaintiff is entitled to summary judgment. Nor do I think defendant is aggrieved by the fact that this motion is decided upon affidavits, instead of after a trial. Had it been diligent and moved in time for a new trial of the former action, upon the ground of newly-discovered evidence, which was its proper remedy, that motion would likewise have been disposed of upon affidavits.

The order appealed from should, therefore, be reversed, with ten dollars costs and disbursements, and the motion for summary judgment granted, with ten dollars costs.

CLARKE, P. J., MERRELL, FINCH and BURR, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.